James HUCH and Ryan Carstens, Appellants,

v.

CHARTER COMMUNICATIONS, INC., Respondent.

No. SC 89361.

Supreme Court of Missouri, En Banc.

Aug. 4, 2009.

John E. Campbell, Erich Vieth, Amy Collignon Gunn, Simon Passanante, PC, St. Louis, MO, for appellants.

James W. Erwin, Roman P. Wuller, Thompson Coburn LLP, St. Louis, MO, for respondent.

Chris Koster, Attorney General, James R. Layton, State Solicitor, Peter Lyskowski, Assistant Attorney General, Jefferson City, for amicus curiae Office of Missouri Attorney General.

Alicia Campbell, Michael Ferry, Philip Senturia, St. Louis, for amicus curiae Gateway Legal Services, Inc., et al.

PATRICIA BRECKENRIDGE, Judge.

James Huch and Ryan Carstens filed a class-action lawsuit in St. Louis County alleging that Charter Communications illegally charged many of its customers a separate fee for a paper television-channel guide that the customers did not request. Charter moved to dismiss, asserting that the voluntary payment doctrine prohibited the court from ordering Charter to refund the money it charged, and customers paid, for the guide. The trial court sustained the motion and dismissed the complaint, with prejudice. Plaintiffs appealed. After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10. This Court reverses the trial court's judgment and remands the cause to the trial court. On remand, the trial court should overrule Charter's motion to dismiss and proceed with the case.

## Factual and Procedural Background

Charter sells cable television and communication services to customers in Missouri and elsewhere in the United States. Charter sent a paper television-channel guide to its customers, even though its customers did not request this product. It charged its customers for the unsolicited guide by including the charge on customers' monthly bills for cable or other communication services.

Because of these alleged actions, Mr. Huch and Mr. Carstens filed suit against Charter under sections 407.025 and 407.200.[1] These sections are part of the Missouri Merchandising Practices Act, sections 407.010–407.1129.[2] In their amended petition, plaintiffs alleged that Charter sent the unsolicited channel guide to its customers and charged them for this guide.[3] Charter allegedly: (1) failed to give plaintiffs the option to receive or not receive the guide—merchandise that is not included in the monthly rate; (2) sent the guide to plaintiffs, even though they did not request it; (3) failed to state or disclose that charges would be added to plaintiffs' Charter bills for the guide; and (4) charged each plaintiff approximately $3 per month for the guide.[4]

Mr. Huch and Mr. Carstens asked the trial court to certify a class of those individuals who did not request, but who received and were charged for, the guide. On behalf of themselves and the class, they sought monetary damages, including punitive damages. Their prayer also requested a permanent injunction prohibiting Charter from engaging in unfair or deceptive trade practices, including the sale of the guide by unlawful trade practice, deception, fraud, false pretense, misrepresentation, concealment, suppression, omission of and the knowing failure to state material facts.

Charter filed a motion to dismiss plaintiffs' petition, asserting that the voluntary payment doctrine, an affirmative defense, bars plaintiffs' claims. On May 21, 2007, the trial court sustained Charter's motion and dismissed plaintiffs' petition, with prejudice.

## Claims on Appeal

On appeal, plaintiffs raise three claims of error. First, they assert that the trial court erred in dismissing their cause of action because the voluntary payment doctrine does not apply to claims brought under the act. Specifically, plaintiffs contend that the voluntary payment doctrine is a form of waiver and the rights provided by the act cannot be waived, that application of the voluntary payment doctrine to the act is inconsistent with public policy, and that application of the voluntary payment doctrine to the act improperly would allow an equitable doctrine to nullify legislative intent. The plaintiffs also assert that the voluntary payment doctrine is not

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

2. The statutes that comprise the act are in either RSMo 2000 or RSMo Supp. 2006. The statutes subsequently have been amended, RSMo Supp. 2008, but the amendments are not relevant to this appeal because they were not in effect at the time the judgment was entered.

3. Mr. Huch and Mr. Carstens' petition seeks both individual relief and relief on behalf of all other Charter customers who received and were charged for a guide they did not request or agree to receive. For ease, this Court will refer to Mr. Huch and Mr. Carstens, as well as other members of the proposed class, as "plaintiffs."

4. Plaintiffs allege that some individuals were charged a supplemental fee of $2.99 each month and others were charged $3.24 each month.

a valid defense to claims of fraud or improper conduct, and they contend that Charter's actions constitute fraud or improper conduct. Finally, plaintiffs contend that the trial court erred in dismissing their claims in reliance on the voluntary payment doctrine because the trial court misapplied the law when it failed to construe the allegations in the petition in the light most favorable to plaintiffs, the nonmoving party, and made findings that were inconsistent with the allegations in the petition.

## Standard of Review

This Court reviews the trial court's grant of a motion to dismiss *de novo*. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). When reviewing such a grant, this Court "assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom." *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001) (quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993)). "A motion to dismiss based on an affirmative defense may be sustained if the defense is irrefutably shown by the petition." *Elam v. Dawson*, 156 S.W.3d 807, 808 (Mo.App.2005).

## Analysis

Plaintiffs' appeal requires this Court to determine whether the voluntary payment doctrine is a viable affirmative defense to a claim for monetary damages and injunctive relief for a violation of the merchandising practices act. The act's fundamental purpose is the "protection of consumers," *State ex rel. Nixon v. Continental Ventures Inc.*, 84 S.W.3d 114, 117 (Mo.App.2002), and, to promote that purpose, the act prohibits false, fraudulent or deceptive merchandising practices. Section 407.020. Section 407.020 provides that certain acts "in connection with the sale or advertisement of any merchandise

in trade or commerce" are unlawful. Section 407.020.1. Specifically, section 407.020.1 declares the scope of the prohibited unlawful practices:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... in or from the state of Missouri, is declared to be an unlawful practice.

The legislature intended section 407.020 to "supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo.App. 1973).

> Sec. 407.020 does not define deceptive practices; it simply declares unfair or deceptive practices unlawful. This was done to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions. This leaves to the court in each particular instance the determination whether fair dealing has been violated. It is the defendant's conduct, not his intent, which determines whether a violation has occurred. It is not necessary in order to establish "unlawful practice" to prove the elements of common law fraud.

*State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo.App.1988) (internal citations omitted).

Although the legislature did not define deceptive practices, it granted the attorney general authority to promulgate "all rules necessary to the administration and enforcement" of the provisions of the act, which includes the authority to pro-

mulgate rules setting out the scope and meaning of the act. Section 407.145; *State ex rel Nixon v. Telco Directory Pub.*, 863 S.W.2d 596, 601 (Mo. banc 1993). One of the rules promulgated by the attorney general defines an unfair practice as a practice that "(A) [e]ither—1. [o]ffends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; **or** 2. [i]s unethical, oppressive or unscrupulous; **and** (B) [p]resents a risk of, or causes, substantial injury to consumers." 15 CSR 60–8.020(1) (emphasis added). Another rule further defines unfair practice as including the act of charging for unsolicited merchandise: "It is an unfair practice for any seller in connection with the advertisement or sale of merchandise to bill, charge or attempt to collect payment from consumers, for any merchandise which the consumer has not ordered or solicited." 15 CSR 60–8.060(1). Because properly adopted and promulgated rules "have independent power as law," *see United Pharmacal Co. v. Mo. Bd. of Pharmacy*, 159 S.W.3d 361, 365 (Mo. banc 2005), the rule's declaration that the act of charging for unsolicited merchandise is an unfair practice makes that conduct unlawful under the act. *See Telco Directory Pub.*, 863 S.W.2d at 601.

The merchandising practices act imposes criminal penalties and civil liability on persons who engage in conduct that it deems unlawful. A person who willfully and knowingly engages in an unlawful act, as defined by the statute, is guilty of a class D felony. Section 407.020.3. Additionally, the legislature provides that any person who "suffers an ascertainable loss of money or property" as the result of an unlawful practice may file a civil lawsuit to recover actual and punitive damages, as well as attorney fees, from any person who has engaged in a method, act or practice declared unlawful by section 407.020. Sec-

tion 407.025.1. A class action lawsuit also is authorized when the unlawful conduct has caused similar injury to "numerous other persons." Section 407.025.2. "In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees." *Id.*

Because of the act's broad scope and the legislature's clear policy to protect consumers, certain legal principles are not available to defeat claims authorized by the act. *See High Life Sales Co. v. Brown–Forman Corp.*, 823 S.W.2d 493, 498 (Mo. banc 1992). This Court in *High Life Sales* determined that enforcement of a contract's forum selection clause was unreasonable in light of the important state interest in protecting licensed liquor distributors from unjustified termination of their franchises. *Id.* The Court found that the statutes protecting a holder of a liquor distribution franchise, in chapter 407, "carry heightened public policy considerations that outweigh any public policy considerations involved in the enforcement of a forum selection clause." *Id.* In so ruling, the Court cited with approval the reasoning of *Electrical and Magneto Service Co. v. AMBAC International Corp.*, an Eighth Circuit case holding that "the public policy involved in Chapter 407 is so strong that parties will not be allowed to waive its benefits." *Id.* (citing 941 F.2d 660, 664 (8th Cir.1991)). The reasoning of *Electrical and Magneto Service Co.*, as relied upon by this Court in *High Life Sales*, is:

> In short, Chapter 407[, the MPA,] is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices. Having enacted paternalistic legislation designed to protect those that could not

otherwise protect themselves, the Missouri legislature would not want the protections of Chapter 407 to be waived by those deemed in need of protection. Furthermore, the very fact that this legislation is paternalistic in nature indicates that it is fundamental policy: "a fundamental policy may be embodied in a statute which ... is designed to protect a person against the oppressive use of superior bargaining power." Restatement (Second) of Conflicts § 187 comment g.

\* \* \*

The Missouri statutes in question, relating to merchandising and trade practices, are obviously a declaration of state policy and are matters of Missouri's substantive law. To allow these laws to be ignored by waiver or by contract, adhesive or otherwise, renders the statutes useless and meaningless.

*Id.* (quoting *Electrical and Magneto Service Co.,* 941 F.2d at 664).

Likewise, in *Whitney v. Alltel Communications, Inc.,* a contract provision requiring arbitration was found to be unconscionable because giving it effect would deny protections afforded by the merchandising practices act. 173 S.W.3d 300, 314 (Mo. App.2005). The court held that to allow companies to avoid the consumer protections established in the act "would effectively strip consumers of the protections afforded to them under the Merchandising Practices Act and unfairly allow companies ... to insulate themselves from the consumer protection laws of this State." *Id.* "This result would be unconscionable and in direct conflict with the legislature's declared public policy as evidenced by the Merchandising Practices Act and similar statutes." *Id.* The affirmative defense of estoppel is also not available in the context of a merchandising practices case because estoppel "may not be used where it would result in fraud." *Pointer v. Edward L.*

*Kuhs Co.,* 678 S.W.2d 836, 844 (Mo.App. 1984).

 While other legal principles are not available to defeat claims under the act, the issue here is whether the voluntary payment doctrine is a defense that is available in the context of the MPA. The voluntary payment doctrine "is well established, both in England and in this country, [and the doctrine provides] that a person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it back, though the payment is made without a sufficient consideration, and under protest." *Am. Motorists Ins. Co. v. Shrock,* 447 S.W.2d 809, 812 (Mo.App.1969). *See also Carpenter v. Countrywide Home Loans, Inc.,* 250 S.W.3d 697, 703 (Mo. banc 2008). It is a recognized defense to an action for money had and received. *Carpenter,* 250 S.W.3d at 703. Unless there is fraud or duress, the voluntary payment doctrine prohibits a person who voluntarily pays money with full knowledge of the facts from recovering the money. *Id.* When evaluating the rationale behind this rule of law, courts emphasize that "[a] person who, induced thereto solely by a mistake of law, has conferred a benefit upon another to satisfy in whole or in part an honest claim of the other to the performance given, is not entitled to restitution." *Am. Motorists Ins. Co.,* 447 S.W.2d at 813 (quotation marks and citation omitted). "The underlying reason for those requirements is that it would be inequitable to give such person the privilege of selecting his own time and convenience for litigation short of the bar of the statute of limitations, and thereby subject the payee to the uncertainties and casualties of human affairs likely to affect his means of defending the claim." *Id.* at 812.

Charter argues it is entitled to protection from suit by plaintiffs under the voluntary payment doctrine due to the doctrine's longstanding existence in Missouri, but there is no such entitlement. This Court previously has held that the voluntary payment doctrine is "not applicable in all situations." *Eisel v. Midwest Bank-Centre,* 230 S.W.3d 335, 339 (Mo. banc 2007). In *Eisel,* the Court held that the voluntary payment doctrine was not available as a defense against customers who paid fees for document preparation that constituted the unauthorized practice of law. *Id.* at 339–40. The Court reasoned that because "the voluntary payment doctrine is a principle based on waiver and consent" and "the activities prohibited by section 484.020 [which prohibits the unauthorized practice of law] are not subject to waiver, consent or lack of objection by the victim," the voluntary payment doctrine was not available as a defense. *Id.* at 339. "To hold otherwise—that a customer, not a mortgage lender, would be burdened with the responsibility to recognize the unauthorized business of law and be barred from recovery due to having made a voluntary payment—would be illogical and inequitable." *Id.* at 339–40. *See also Carpenter,* 250 S.W.3d at 703 (same). While *Eisel* addressed the applicability of the voluntary payment doctrine within the context of the unauthorized practice of law, its reasoning, that the voluntary payment doctrine is a principle based on waiver and consent that is not always available when its application would be contrary to public policy, is equally applicable in the context of the MPA.

As noted earlier, the legislature enacted chapter 407 "to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices." *High Life Sales,* 823 S.W.2d at 498 (citation omitted). "Having enacted paternalistic legislation designed to protect those that could not otherwise protect themselves, the Missouri legislature would not want the protections of Chapter 407 to be waived by those deemed in need of protection." *Id.* (citation omitted). Further, having declined to recognize waiver by a provision in a written contract when such waiver would nullify the protections of the act, *see id.* at 499–500, this Court is not persuaded to impose such a waiver when the waiver originates from conduct, such as waiver under the voluntary payment doctrine.

Here, plaintiffs allege that Charter provided unsolicited merchandise to consumers in the form of the channel guide and then billed and collected, or attempted to collect, payment for the unordered merchandise. This conduct, if proven, is an unfair practice that is prohibited by the act. 15 CSR 60–8.060(1); section 407.020.1. To allow Charter to avoid liability for this unfair practice through the voluntary payment doctrine would nullify the protections of the act and be contrary to the intent of the legislature.

In light of the legislative purpose of the merchandising practices act, the voluntary payment doctrine is not available as a defense to a violation of the act. The judgment of the trial court is reversed, and the cause is remanded.[5]

All concur.

___

5. Because the voluntary payment doctrine is not available as a defense, it is not necessary to address whether the trial court erred in its application of the doctrine.