

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| GREG WILEY, AND JULIA MITTELSTADT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | No. ED102019 |
| | ) | |
| Plaintiffs/Appellants | ) ) | Appeal from the Circuit Court of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable David L. Dowd |
| GREGORY F.X. DALY, COLLECTOR OF REVENUE FOR THE CITY OF SAINT LOUIS, ET AL, | ) ) ) | |
| | ) | Filed: August 11, 2015 |
| Defendants/Respondents. | ) | |

## INTRODUCTION

Greg Wiley and Julia Mittelstadt (collectively "Appellants") appeal the trial court's judgment in favor of Respondents Gregory F.X. Daly as the Collector of Revenue for the City of St. Louis ("Collector") and M. Jane Schweitzer, as the Circuit Clerk for the City of St. Louis ("Circuit Clerk"),[1] on their petition for declaratory relief and reimbursement of "court costs" paid to Collector.

Appellants raise four points. They contend the court erred in: (1) dismissing Mittelstadt based on the voluntary payment doctrine; (2) dismissing Appellants' claim that payment of court

---

[1] Appellants do not appeal the court's judgment dismissing their claims against Respondent City of St. Louis.

1

costs to Respondents violates Article X, Section 22(a) of the Missouri Constitution (the "Hancock Amendment"); and (3) entering summary judgment in favor of Respondents on Wiley's remaining claims for declaratory relief and a "refund" of unlawfully collected court costs. In their fourth point Appellants assert: "[a] class action is a superior method of addressing the thousands of cases in which taxpayers are entitled to refunds under [section] 514.270."[2] We affirm in part, reverse in part, vacate in part, and remand with instructions.

FACTUAL AND PROCEDURAL BACKGROUND

This case concerns Collector's practice of collecting fees, which Collector denominates "court costs," in relation to suits brought by Collector against residents of the City of St. Louis ("City") for delinquent property taxes. The instant case arose when Collector brought suit against each Appellant for outstanding property taxes.[3] In addition to seeking an award of delinquent property taxes, Collector also petitioned the court to assess interest, penalties, attorney's fees and "court costs."[4]

Appellants agree that neither of them entered an appearance nor contested the lawsuit filed against them for delinquent property taxes. Instead, each Appellant tendered the total sum demanded, including fees denominated as "court costs," directly to Collector's office. Wiley submitted his payment of these costs "under protest," Mittelstadt did not pay her costs under protest. Upon receiving payment of the total sum demanded, including "court costs," Collector

---

[2] Unless otherwise indicated, all statutory references are to R.S.Mo. (2000), as supplemented.

[3] We take judicial notice of the case records and docket sheets from these underlying cases, showing that in June 2008, Collector filed suit in the Circuit Court of the City of St. Louis against Mittelstadt in cause number 0822-CC03077, and later filed suit against Wiley in June 2010, in cause number 1022-CC03827.

[4] In Wiley's case, the docket sheet shows that a summons issued and he was personally served. There is no record indicating that Wiley entered his appearance or answered. After several months, a judge was assigned. Six months later the case was dismissed with prejudice. The docket sheet provides, "Dismissed by Parties," followed by "Memorandum Filed" which states: "[c]omes now Plaintiff [Collector] herein and dismisses his cause of action with prejudice. Defendant [Wiley] having tendered cost of Plaintiff [sic]." In Mittelstadt's case, the docket sheet shows that a summons issued. The next transcription shows "Hearing/Trial Cancelled." Several months later, the minutes show "Dismissed by Parties," with a "Memorandum Filed," stating: "[c]omes now Plaintiff [Collector] herein and dismisses his cause of action with prejudice with costs. Defendant having tendered Cost of Plaintiff [sic]."

2

issued a "paid" receipt to Appellants. Collector then forwarded the paid "costs" to Circuit Clerk, who taxed court costs against each Appellant and dismissed "with prejudice" the underlying lawsuits brought against them.

After submitting payment to Collector, Wiley timely filed a class-action petition in the instant trial court. Wiley alleged, in relevant part, that Respondents unlawfully assessed "court costs" against him, and requested declaratory judgment, reimbursement of the "court costs" previously paid to Collector, and certification of a class of similarly situated residents who paid such costs to Collector. Collector and Circuit Clerk filed a motion to dismiss. After a hearing, the court dismissed several of Wiley's claims, and following a subsequent hearing, also denied Wiley's request for class certification.[5]

Following the court's denial of class certification, the court granted Wiley's motion to join Mittelstadt as a new party plaintiff. Appellants then filed a third amended petition, which contained three counts.

Count I, entitled "declaratory judgment," requested "[c]ertification of a class of individuals . . ." who had been sued by Collector for outstanding personal property taxes and who paid "court costs" arising out of such lawsuits. Count I also requested, in relevant part, that the court issue an order: (1) prohibiting Respondents from collecting "court costs" when they file future lawsuits against taxpayers to recover allegedly delinquent personal property taxes; (2) prohibiting Respondents from withholding personal property tax receipts verifying payment of any delinquent tax when payment of the full amount of the delinquent tax is tendered; (3) requiring Respondents to establish a fund to reimburse purported class members who were sued

---

[5] The court found that because Wiley was the only putative class member who tendered, under protest, payment of "court costs," his claims were significantly different than "a large number of purported class members." As a result, the court denied class certification on the grounds that Wiley failed to prove sufficient commonality, typicality, and adequacy of representation concerning the putative class.

3

for delinquent personal property taxes and who paid Collector "court costs" arising out of such lawsuits, from 2002 up to the present date; and (4) requiring Respondents to refund all interest on "court costs" already collected.

Count II, entitled "Refund of Court Costs Improperly Collected," requested a "refund of court costs improperly collected" under sections 514.260, 514.270, & 488.014. Specifically, Count II alleged that Respondents unlawfully collected "court costs" from Appellants and the putative class, and requested that the court order Respondents:

> [1] to refund all Court costs paid by each and every delinquent taxpayer who was sued by [Respondents] after and including the year 2002, . . . [and] [2] pay attorney's fees from and as a percentage of the common fund established to repay [Apppelllants] and the putative class members . . . .

Count III, entitled "Violation of the Hancock Amendment," alleged that Respondents' collection of "court costs" from Appellants amounted to an unlawful tax in violation of the "Hancock Amendment" under Article X, 22(a) of the Missouri Constitution. Count III further requested the court enter a "declaratory judgment" ordering:

> [1] certification of a class of individuals . . . who were sued by [Collector] for personal property taxes after and including the years 2002 and who paid [Respondents] 'Court costs' arising out of such lawsuits; [2] that [Respondents] are prohibited from collecti[ng] 'Court costs' when they cause a suit to be filed against taxpayers to recover delinquent personal property tax; [3] That Notice be disseminated to individual class members pursuant to Missouri Law, . . . [4] That [Respondents] pay reasonable attorneys' fees and costs of this litigation . . . .

Respondents moved to dismiss Appellants' third amended petition, [6] and in the alternative, moved for summary judgment on all three counts. Respondents also submitted a statement of uncontroverted facts with exhibits in support.

In their motion seeking dismissal and summary judgment, Respondents argued, in relevant part, the court should dismiss Appellants' claims against City because the

---

[6] Respondents' motion mislabels Appellants' petition, referring to it throughout as the "Second Amended Petition," however the record reflects it is Appellants' third amended petition that Respondents moved to dismiss.

uncontroverted facts fail to establish that City participated in any of the actions upon which Appellants base their claims. Respondents also moved to dismiss Appellants' Count I claim for declaratory relief, arguing Appellants failed to state a claim warranting declaratory relief because an adequate remedy at law is available to seek a refund of unlawfully taxed "court costs," by motion to the court that assessed such costs, pursuant to section 514.270.

Additionally, Respondents argued Appellants' Count II statutory claim seeking a refund of court costs and Count III constitutional claim failed as a matter of law. Respondents asserted the voluntary payment doctrine bars Appellants' Count II claim seeking a refund of "court costs," because Appellants failed to pay such costs under protest. Respondents also argued that Appellants' claim for a refund of "court costs" under section 514.270 cannot be asserted in a lawsuit other than the original proceeding in which such costs were incurred. Alternatively, Respondents argued that the uncontroverted facts establish the challenged "court costs" were lawfully imposed. Lastly, Respondents argued Appellants' Count III constitutional claim failed as a matter of law, because the challenged costs do not constitute a tax within the meaning of the Hancock Amendment.

The court held a hearing on Respondents' motion to dismiss and motion for summary judgment. After considering the arguments and exhibits in support, the court entered judgment in favor of Respondents.

The court dismissed all of Mittelstadt's claims, finding she waived her claims under the voluntary payment doctrine, because she failed to tender payment of her "court costs" under protest. Next, the court granted Respondents' motion to dismiss City, holding the petition failed to allege that City had improperly collected or retained any of the "court costs" at issue. The court also dismissed, for failure to state a claim, Appellants' Count III claim alleging

Respondents' collection of court costs violated the Hancock Amendment. The court found the challenged costs are not a tax within the meaning of the Hancock Amendment.

The court, however, found that Wiley paid his "court costs" under protest. The voluntary payment doctrine, therefore, did not bar his remaining Count I claim for declaratory relief or Count II request for a refund of "court costs." Thus, the court considered the merits of these two remaining claims.

The court observed that, pursuant to section 514.190, costs may be recovered in suits brought by the state or county, "if the plaintiff shall recover any debt or damages." The court reasoned that, because the costs pertained to Collector's claim for outstanding property taxes, which Collector recovered, and because Collector turned over such costs to Circuit Clerk, who then taxed these costs in the underlying action filed by Collector against Wiley, the costs were lawfully collected.[7] Moreover, the court observed that Wiley "had an opportunity to challenge the assessment of "court costs" within the tax collection case itself pursuant to [section] 514.270 RSMO," yet he did not do so. As a result, the court determined that such "court costs" collected from Wiley "were not unlawful as a matter of law, and . . . [Appellants]' claims fail in Counts I and II." The court ruled that Respondents' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is granted."

Appellants timely appealed. During the pendency of this appeal, Respondents filed an unopposed motion to strike and dismiss Point IV from Appellants' brief. We ordered Respondents' motion taken with the case, and we address it in our discussion below.

---

[7] The court further described how Circuit Clerk distributes the fees, and concluded Circuit Clerk "uses the fees collected for the functions of the Court, which functions include the processing of these very cases . . . necessitated by the failure of [Appellants] and others similarly situated to timely pay their personal property taxes."

## STANDARD OF REVIEW

We review de novo the trial court's grant of a motion to dismiss. Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo. banc 2008). A motion to dismiss for failure to state a claim upon which relief can be granted should not be granted unless "taking all factual allegations as true, plaintiff's pleadings are insufficient to establish a cause of action." Grewell v. State Farm Mut. Auto. Ins. Co., Inc., 102 S.W.3d 33, 35-36 (Mo. banc 2003); Rule 55.27(a)(6). On a motion to dismiss for failure to state a claim, we construe the petition favorably, giving the pleader the benefit of every reasonable intendment concerning the facts alleged, and if the allegations invoke principles of substantive law that may entitle him or her relief, the petition is not to be dismissed. Mays-Maune & Assoc., Inc. v. Werner Bros., Inc., 139 S.W.3d 201, (Mo. App. E.D. 2004). However, when, on a motion to dismiss for failure to state a claim, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04." Rule 55.27(a).

This Court also reviews de novo the trial court's grant of a motion for summary judgment. ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). If the "motion, the response, the reply and the sur-reply show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . the court shall enter summary judgment forthwith." Rule 74.04(c)(6); Conway v. St. Louis Co., 254 S.W.3d 159, 163 (Mo. App. E.D. 2008). In ruling on a motion for summary judgment, we review the record in the light most favorable to the non-moving party." Conway, 254 S.W.3d at 163-64. Because the role of this Court is to determine whether or not the trial court reached a proper result, we will uphold an order granting summary judgment if it is sustainable on any theory. McMullin v. Borgers, 761 S.W.2d 718, 719 (Mo. App. E.D. 1988).

DISCUSSION

A.     This Court's Authority to Consider Appellants' Points I & III

Appellants' first and third points raise a threshold issue concerning our statutory authority to hear this appeal. In their first point, Appellants contend, in relevant part, that the trial court erred in finding all of Mittelstadt's claims are "barred" by the voluntary payment doctrine, because this doctrine is "patently incompatible" with the statutory language of section 514.270. In their third point, Appellants again invoke section 514.270, and contend the court erred in dismissing their Count I claim for declaratory judgment and Count II claim requesting a refund of unlawfully paid "court costs."

Respondents answer, in relevant part, that Appellants' Counts I and II claims requesting a review of the bills of costs and refund of "court costs" under section 514.270 must be made by motion to the trial court that rendered the underlying judgments against them. We agree that section 514.270 provides an exclusive remedy requiring that any party challenging a clerk's taxation of "court costs" must do so by filing a motion for "retaxation" of such costs in the trial court "in which the action or proceeding was had."

"Statutes allowing the taxation of costs are strictly construed." Fisher v. Spray Planes, Inc., 814 S.W.2d 628, 633 (Mo. App. E.D. 1991). The Missouri legislature, in section 514.260, states that it is the duty of the clerk to tax the costs "arising in any cause or proceedings instituted or adjudged in the court of which he is the clerk." Id. at 631. Section 514.330 similarly imposes on the clerk a duty to "strictly examine the accounts of all [c]ourt costs accruing during the progress of any civil suit pending . . . and shall correct the same if wrong in any manner . . . ." See also § 488.012 (charging clerk of each court "shall collect the court costs authorized by statute . . . .").

8

The legislature, in section 514.270, has provided litigants with the right to seek reimbursement, or "retaxation," of any bill of costs improperly assessed by the clerk as follows:

Any person aggrieved by the taxation of a bill of costs may, upon application, have the same retaxed by the court in which the action or proceeding was had, and in such retaxation all errors shall be corrected by the court; and if the party aggrieved shall have paid any unlawful charge, by reason of the first taxation, the clerk shall pay the costs of retaxation, and also to the party aggrieved the amount which he may have paid by reason of the allowing of such unlawful charge.

Section 514.270 does not specifically address the procedure for submitting an "application" for retaxation or indicate whether a separate action for retaxation may be brought in the same judicial circuit. However, section 509.280 provides that in all civil suits, "[a]n application to the court for an order *shall be by motion* . . . ." (emphasis added). Additionally, Missouri Supreme Court Rule 77.05 provides, "[a]ny party, *on motion*, may have a bill of costs reviewed *by the court in which the civil action was heard*." (emphasis added).

Missouri case law has long recognized that, pursuant to section 514.270 and its predecessor statute, a party complaining "that the judgment taxing the costs is wrong, for any reason . . . must, to obtain relief, lodge his complaint *with the court rendering such judgment* . . . ." Turner v. Butler, 66 Mo. App. 380, 386 (Mo. App. K.C. 1896) (emphasis added); see also In re J.P., 947 S.W.2d 442, 444 (Mo. App. W.D. 1997) ("If a party contests a category or specific item of costs, the remedy is by motion to retax *in the court of the alleged error*.") (emphasis added); Fisher, 814 S.W.2d at 633-34. "Once court costs are taxed by the clerk, any party may file a motion to retax costs so the trial court can review the clerk's bill of costs." Solberg v. Graven, 174 S.W.3d 695, 701 (Mo. App. S.D. 2005) (citing § 514.270 and Rule 77.05). "If the court denies the party's motion to retax costs, the party can then appeal such denial to this Court, because the denial of a Rule 77.05 motion to retax costs is an appealable order." Montoya v. A-1 Mufflers, Inc., 331 S.W.3d 702, 704 (Mo. App. W.D. 2011).

9

Here, neither Appellant filed a motion seeking retaxation of "court costs" in the court where the costs were initially assessed. Instead, Appellants brought the instant separate action, requesting under Counts I and II, that the instant trial court review the bills of costs assessed by the prior trial courts. Although Appellants' Count I and II claims are brought in the same judicial circuit where the underlying judgments were entered, we interpret sections 514.260 and 514.270, together with Rule 77.05 and Missouri case law to require a party seeking retaxation of a clerk's bill of costs to do so by motion to the specific trial court in which the proceedings were held, and which resulted in the assessment of such costs.

Furthermore, the remedy provided by section 514.270, requiring Appellants to challenge a clerk's bill of costs by motion to the trial court where such costs were assessed, is an exclusive remedy. "[W]here a statute creates a right or liability that did not exist at common law or under prior statutes, and also provides a specific remedy for the enforcement thereof, as a general rule such statutory remedy is exclusive." Wear v. Walker, 800 S.W.2d 99, 103 (Mo. App. S.D. 1990) (citing Gales v. Weldon, 282 S.W.2d 522, 529 (Mo. 1955)). Here, like fixed "costs," which are creatures of statute rather than common law, In re J.P., 947 S.W.2d at 444, the right to seek reimbursement for unlawfully taxed costs under section 514.270 is a creature of statute, and the legislature specifically provides the remedy to enforce that right. Because section 514.270 creates a statutory right and provides a specific remedy, the remedy is exclusive. Consequently, the instant trial court lacked the authority to review Appellants' Counts I claim challenging Circuit Clerk's taxation of such costs and Count II claim requesting a "refund" of unlawfully paid "court costs" under section 514.260 and 514.270.

This Court's authority to review the merits of a claim is predicated on the trial court's competence to rule on that issue; if the trial court lacked the statutory authority to determine an

10

issue, then this Court lacks the authority to review it. <u>Brock v. Blackwood</u>, 143 S.W.3d 47, 55 (Mo. App. W.D. 2004).[8] Because the trial court lacked the authority to review Appellants' Count I claim as it relates to Circuit Clerk's assessment of "court costs" and their Count II claim requesting a refund of such costs under sections 514.260 and 514.270, we also lack authority to review Circuit Clerk's taxation of such costs or to grant a refund for unlawfully assessed costs against either Respondent under Count II. Accordingly, we vacate the judgment of the trial court with respect to Count I against Circuit Clerk and Count II against both Respondents, and we remand with instructions to dismiss these claims without prejudice to refile in the appropriate court.[9]

Nevertheless, the language of sections 514.260 and 514.270 apply only to costs assessed by Circuit Clerk. Therefore, the instant trial court was not precluded from reviewing Appellants' Count I claim for declaratory relief, to the extent it challenges Collector's authority to demand and collect such costs. Nor was the trial court precluded from considering Appellants' Count III claim, alleging Respondents' conduct violated the Hancock Amendment. We therefore address these remaining claims.

B. <u>Dismissal of Mittelstadt's Claims Pursuant to the Voluntary Payment Doctrine</u>

In their first point, Appellants contend the trial court erred in finding all of Mittelstadt's claims "barred" by the voluntary payment doctrine. Appellants argue, in relevant part, that the

---

[8] Although <u>Brock</u> and its predecessors characterize the lower court's statutory authority to determine an issue and our authority to review that determination as questions of "jurisdiction," our Supreme Court has subsequently clarified that issues concerning a court's power or authority to review a claim raises an issue of the court's "authority," not its jurisdiction. <u>J.C.W. ex rel. Webb v. Wyciskalla</u>, 275 S.W.3d 249, 253-54 (Mo. banc 2009); <u>see also</u> <u>Hightower v. Myers</u>, 304 S.W.3d 727, 733 (Mo. banc 2010) ("The circuit court's statutory or common law authority to grant relief in a particular case differs from the circuit court's constitutionally granted subject matter and personal jurisdiction."). Consequently, we refer to the trial court's competence to review Appellants' bills of costs under sections 514.260 and 514.270 as an issue concerning its "authority."

[9] As explained in our discussion below, section 514.270 does not establish a time limit in which to file a motion seeking a retaxation of costs fixed by statute. <u>See</u> <u>Fisher</u>, 814 S.W.2d at 633-34; <u>Solberg</u>, 174 S.W.3d at 701; <u>Starling v. Union Pacific R. Co.</u>, 22 S.W.3d 213, 215-16 (Mo. App. W.D. 2000) (recognizing trial court retains "jurisdiction" to enter an order assessing statutory costs based on its review of the court clerk's action assessing such costs, even after a plaintiff has dismissed his suit).

11

voluntary payment doctrine is "patently incompatible" with the statutory language of section 514.270, which provides a litigant with the unequivocal right to seek reimbursement for "court costs" erroneously "taxed" against them. Respondents answer that the voluntary payment doctrine is a viable affirmative defense. Alternatively, they argue that section 514.270 required Mittelstadt to contest her "court costs" by motion to retax in the court of the alleged error, and because she did not file a motion challenging the taxation in the underlying action, she waived her right to contest such costs.

We agree with Appellants insofar as the voluntary payment doctrine is not available as an affirmative defense to bar claims challenging unlawfully collected court costs, because its application would be contrary to this state's public policy, as expressed in section 514.270. We therefore reverse the court's dismissal of Mittelstadt's Count I claim against Collector.

In Missouri, the voluntary payment doctrine is a long-recognized affirmative defense in actions involving common law claims for restitution of money. See Jurgensmeyer v. Boone Hosp. Ctr., 727 S.W.2d 441, 444 (Mo. App. W.D. 1987) (applying doctrine to bar claim for money had and received); Unverferth v. City of Florissant, 419 S.W.3d 76, 106 (Mo. App. E.D. 2013) (applying doctrine to bar claim for unjust enrichment). The doctrine arose in England out of principles of equity, [10] and first emerged in Missouri during the Civil War in Claflin v. McDonough, 33 Mo. 412, 416 (1863),[11] a case in which the court applied the voluntary payment doctrine to bar plaintiffs' claim when "the plaintiffs paid the money with a full knowledge of all

_____

[10] The doctrine was applied in the case of Bilbie v. Lumley, (1802) 2 East 469 (1802 ER 448), which involved an action for money had and received by an underwriter of an insurance policy against the insured. Id. at 469. In Bilbie the plaintiff alleged the money was erroneously paid based on a mistake of law. Id. at 469. The court in Bilbie reasoned "[e]very man must be taken to be cognizant of the law; otherwise there is no saying to what extent the excuse of ignorance might not be carried. It would be urged in almost every case." Id. at 472.

[11] For a more thorough discussion on the history of the voluntary payment doctrine, see John E. Campbell & Oliver Beatty, *Huch v. Charter Communicantions, Inc.: Consumer Prey, Corporate Predators, and a Call for The Death of the Voluntary Payment Doctrine Defense*, 46 Val. U. L. Rev. 501, 503-05 (2012).

the facts and circumstances, and well knowing that they were under no legal obligations to pay it."[12]

Under the voluntary payment doctrine, a person who has voluntarily paid a defendant with full knowledge of all material facts is not entitled to later recover that payment, unless it resulted from fraud or duress. Huch v. Charter Commc'ns, Inc., 290 S.W.3d 721, 726 (Mo. banc 2009). Furthermore, if the payment was induced solely by a mistake of law, the plaintiff "is not entitled to restitution." Am. Motorists Ins. Co. v. Shrock, 447 S.W.2d 809, 812 (Mo. App. K.C. 1969). The reasoning behind this doctrine is that "it would be inequitable to give [the payor] the privilege of selecting his own time and convenience for litigation short of the bar of the statute of limitations . . . thereby subject[ing] the payee to the uncertainties and casualties of human affairs likely to affect his means of defending the claim." Id.

The voluntary payment doctrine, however, is "not applicable in all situations." Huch, 290 S.W.3d at 727 (quoting Eisel v. Midwest BankCentre, 230 S.W.3d 335, 339 (Mo. banc 2007)). For instance, in Eisel v. Midwest BankCentre, bank customers brought a class action against a bank, alleging the bank was engaged in the unauthorized practice of law through its loan processing procedures. Id. at 337. The Missouri Supreme Court held that the voluntary payment doctrine was not available as a defense to the statutory recovery of treble damages for the unauthorized practice of law. 230 S.W.3d at 339-40. In Eisel, the Court found that the activities of the bank were prohibited by statute, and were "not subject to waiver, consent or lack of objection by the victim." Id. at 339. Therefore, in light of the available statutory remedy, it would be "illogical and inequitable" to hold the consumer, not the mortgage lender, responsible for recognizing the unauthorized practice of law and bar recovery because of a voluntary

---

[12] Coincidentally, this case also involved a claim by plaintiffs to recover money paid to a defendant tax collector, however, the plaintiffs' claim was for money had and received. Id. at 413, 416.

13

payment. Id. at 339-40. Similarly, in Carpenter v. Countrywide Home Loans, Inc., the Missouri Supreme Court held that the voluntary payment doctrine was not available to preclude customers of a mortgage broker from recovering document preparation fees paid to the broker for preparation of documents, because the fees were prohibited by law. 250 S.W.3d 697, 703 (Mo. banc 2008) (citing Eisel, 230 S.W.3d at 339-40). Moreover, in Huch v. Charter Commc'ns, Inc., the Missouri Supreme held that because the voluntary payment doctrine "is a principle based on waiver and consent" it was not available in actions brought under Missouri's Merchandising Practices Act (the "MMPA").[13] 290 S.W.3d at 727. In reaching this determination, the Court in Huch reasoned that, to hold otherwise, "would be contrary to public policy . . ." because it "would nullify the protections of the act and be contrary to the intent of the legislature." Id.

Here, the trial court dismissed Mittelstadt's claims after finding her "claims are barred by the voluntary payment doctrine." In reaching this determination the court, citing Pitman v. City of Columbia, 309 S.W.3d 395, 403-04 (Mo. App. W.D. 2010), stated "[u]nder the doctrine tax payments are presumed to have been made voluntarily, therefore it is incumbent upon the taxpayer to establish either that the doctrine should not apply, or that his or her payment was made involuntarily." Citing section 139.031, and related case law, the court also stated "[w]hen a challenge is made to a tax assessment, the procedure as outlined in [section] 139.031 involves paying taxes under protest and filing a statement with the collector . . . ."

Pitman, however, involved a common law claim for unjust enrichment, rather than an action seeking a statutory remedy. 309 S.W.3d at 401. Furthermore, while we recognize that, pursuant to the plain language of section 139.031, a "taxpayer" must protest "all or any part of any current taxes assessed against the taxpayer," here, Mittelstadt is challenging payment of "court costs," not "taxes." See Cronin v. State Farm Fire & Cas. Co., 958 S.W.2d 583, 587 (Mo.

---

[13] §§ 407.010 to 407.309.

14

App. W.D. 1997) ("The cardinal rule of statutory construction is to determine the intent of the legislature from the wording of the statute and to give effect to that intent, if possible."); cf. Ford Motor Co. v. City of Hazelwood, 155 S.W.3d 795, 798-99 (Mo. App. E.D. 2005) (recognizing taxpayer must submit payment under protest to challenge "any part of the *taxes* he paid." (emphasis added)). Thus, the statutory requirement that a taxpayer protest her payment of taxes under section 139.031 is inapposite to our determination regarding application of the voluntary payment doctrine to the payment of "court costs."

Appellants cite Huch, and argue, in relevant part, that section 514.270 reflects the legislature's intent to protect parties who pay and challenge allegedly unlawful "court costs," and this right cannot be waived through application of the voluntary payment doctrine. Respondents answer that Huch is distinguishable on its facts, and is therefore inapplicable. While we agree that Huch concerns a different statute, we find the Court's reasoning in Huch, as well as that in Eisel, and Carpenter, equally applicable to this case.

Statutes passed by the legislature are expressions of public policy, State ex rel. Equality Sav. & Bldg. Ass'n v. Brown, 68 S.W.2d 55, 59 (Mo. banc 1934). By enacting section 514.270, the Missouri legislature established a clear policy to enable "any person" to challenge "any unlawful charge" concerning the "taxation of a bill of costs," regardless of whether such costs were paid under protest. As in Huch, here, availability of the voluntary payment doctrine as an affirmative defense would undermine the protections afforded by the statute and run contrary to the policy expressed by the legislature. Consequently, we agree that the voluntary payment doctrine is not available to preclude Mittelstadt's claims challenging an "unlawful" assessment of "court costs," because to hold otherwise would run contrary to the public policy of Missouri.[14]

---

[14] Alternatively, Respondents argue that we should uphold the trial court's dismissal of Mittelstadt's claims, because she waived her claims "[b]y not contesting the court costs in the underlying lawsuit . . . ." In support,

Accordingly, the trial court erred in dismissing Mittelstadt's Count I claims against Collector under the voluntary payment doctrine. Point I is granted in part.

C.     Dismissal of Appellants' Claims Alleging a Hancock Amendment Violation

In their second point, Appellants contend the trial court erred in dismissing their Count III claim alleging the imposition and collection of "court costs" by Respondents violates the Hancock Amendment, pursuant to Article X, section 22(a) of the Missouri Constitution. Respondents answer the challenged "court costs" do not constitute a tax within the meaning of the Hancock Amendment. We agree with Respondents.

"[I]t is axiomatic that the Hancock Amendment is intended to prohibit *municipal* fee increases that are taxes in everything but name . . . ." Arbor Inv. Co., LLC v. City of Hermann, 341 S.W.3d 673, 682 (Mo. banc 2011) (emphasis added). Article X, section 22(a) provides in relevant part:

> Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution . . . or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter . . . without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon.

Appellants contend that the "court costs" at issue amount to a tax levied by local government in violation of the Hancock Amendment, because they were collected by Collector, a City official who is charged with collecting personal property taxes. Respondents answer, in relevant part, that such costs do not constitute a tax under the Hancock Amendment regardless of

---

Respondents cite In re J.P., 947 S.W.2d 442, 445 (Mo. App. W.D. 1997), which states that "[a] failure to file an objection to a cost bill or memorandum *may* constitute a waiver of the right to contest taxation of questioned items." (emphasis added). For the same reasons that we find the voluntary payment doctrine inapplicable, here, waiver is not available as a defense. See also Fisher, 814 S.W.2d at 633-34 (holding a court may entertain a motion to retax costs fixed by statute even after the case has been voluntarily dismissed and the term of the court has expired); Solberg, 174 S.W.3d at 701; Starling, 22 S.W.3d at 215-16 (recognizing the trial court retains "jurisdiction" to enter an order assessing statutory costs based on its review of the court clerk's action assessing such costs, even after a plaintiff has dismissed his suit); In re J.P., 947 S.W.2d at 445 ("Payment of costs . . . does not signify acquiescence in the judgment or constitute a waiver of the right to appeal.").

whether they were collected by a City official, because the costs were not imposed by local government, and neither City nor Collector had any discretion with respect to use of the money collected. Respondents further argue Ehlmann v. Nixon, 323 S.W.3d 787 (Mo. banc 2010), is controlling.

In Ehlmann, the Missouri Supreme Court addressed whether a state statute creating a "Deputy Sheriff Supplementation Fund," violated a section of the Hancock Amendment that limits the general assembly's ability to impose taxes on "counties or other political subdivisions or upon the inhabitants . . . thereof for municipal, county or other corporate purposes." Id. at 789 (citing Article X, section 10(a) of the Hancock Amendment). The Supreme Court determined that the statute at issue did not create a tax on a county or municipality within the meaning of the Hancock Amendment, because the disputed funds were classified as state money from the time they were collected, not municipal money. Id. In reaching this determination, the Supreme Court acknowledged that the funds were collected by a county sheriff and paid into the county treasury, however, the Court observed the county treasurer had no discretion with respect to the money received, and was required to make such money payable to the state treasurer. Id. Therefore, the Missouri Supreme Court in Ehlmann determined the money collected and distributed was not an unlawful "tax" against a county or political subdivision within the meaning of the Hancock Amendment, because the funds did not belong to a county or other political subdivision at the time of collection. Id.

Although the Supreme Court in Ehlmann examined a different Hancock Amendment section than that at issue here (section 10(a) rather than section 22(a)), the Court's reasoning remains applicable. In the instant case, as in Ehlmann, our inquiry turns on whether or not the challenged funds constitute a tax involving "[c]ounties or other political subdivisions."

Specifically, this Court must address whether the "court costs" amount to a tax levied by City, because they were collected by the Collector of Revenue for City.

Significantly, the uncontroverted facts establish that Collector "turned over" the costs collected from Appellants to Circuit Clerk, who assessed court costs against Appellants. Appellants do not contend that Collector had any discretion with respect to use of the "court costs," or that such funds belonged to Collector at the time of collection. Appellants also do not argue that Circuit Clerk is a part of "a county or other political subdivision" within the meaning of the Hancock Amendment's section 22(a). Nor would we find a clerk's role in assessing a bill of costs to be a political function of a municipality or political subdivision when state law charges the clerk, as part of the state's judicial branch, with the duty of levying and distributing "court costs."[15] Here, as in Ehlmann, because Collector did not have any discretion with respect to use of the funds at the time of collection, and he forwarded the funds to Circuit Clerk, the "court costs" did not belong to a county or other political subdivision when they were collected. Consequently, they do not constitute a tax within the meaning of the Hancock Amendment, and the court did not err in dismissing Appellants' Count III constitutional claim. Point II is denied.

D.     Dismissal of Appellants' Count I Claim Against Collector

In their third point, Appellants contend the court erred in dismissing Appellants' Count I claim for declaratory judgment and Count II claim requesting a refund of unlawfully paid "court costs" pursuant to section 514.270. As discussed in Point I, we dismiss without prejudice Appellants' Count I claim against Circuit Clerk and Count II claims for a refund of "court costs"

---

[15] Circuit Clerk's duty to tax statutory "court costs" is created by state law for the benefit of the state judicial system. See §§ 514.260 and 488.012; see also Solberg, 174 S.W.3d at 700-01 (discussing section 514.260). Section 488.012.2 specifically provides: "[t]he supreme court shall set the amount of court costs authorized by statute, *at levels to produce revenue which shall not substantially exceed the total of the proportion of the costs associated with administration of the judicial system* defrayed by fees, miscellaneous charges and surcharges." (emphasis added). Pursuant to this legislative authority, Missouri Supreme Court Operating Rule 21.01 provides the amount of costs, fees, miscellaneous charges and surcharges associated with court filings, and instructs, "[t]he court clerk shall collect and disburse the above fees . . . ."

against both Respondents, because section 514.270 provides the exclusive remedy for seeking review of a clerk's bill of costs and that a "refund" of any unlawfully assessed costs must be by motion to the trial court where the costs were assessed. Nevertheless, we must still address Appellants' third point as it relates to their remaining Count I claim for declaratory relief against Collector—requesting the court declare Collector be "prohibited" from collection of "court costs" when they cause a suit to be filed against taxpayers to recover delinquent personal property taxes. Respondents answer that the trial court's judgment with respect to Count I may be affirmed, because neither the imposition nor the collection of "court costs" was unlawful. Respondents also argue that declaratory relief would be improper, because both Appellants possessed an adequate remedy at law with which to seek reimbursement of "court costs" under section 514.270. We agree with Appellants that Collector's demand and collection of such costs was unlawful.

Here, the trial court determined "the court costs charged to and collected from [Appellants] were not unlawful as a matter of law," because Collector "does not retain the 'court costs' but remits them to the Circuit Clerk . . . . [and] the Circuit Clerk uses the fees collected for the functions of the Court . . . ." However, neither the trial court nor Respondents provide any authority for allowing Collector to collect "court costs" on behalf of Circuit Clerk.

The record, instead, contains the testimony of Tom Vollmer, an employee of Collector's office, who explained Collector began its practice of collecting court costs for the sake of ministerial expediency. Mr. Vollmer testified, in relevant part, that Collector:

> would send the taxpayer over to the courthouse to pay the court costs . . . [a]nd then they would send them back to the Collector's office, run them back and forth across Tucker. And someone . . . years ago decided it would be easier for like basically a one-stop shop if they would just pay it all and we would then transmit this money back to the court. That way we're not running the taxpayer all over. Another thing too is a lot of people don't even come to our office, they do this by

19

mail. They just want – what they're after is a paid receipt. And they're willing just to resolve these cases. So it's done for expediency for the taxpayer.

Regardless of whether this policy began for the sake of expediency, we find no authority in Missouri law for this practice. Again, pursuant to section 514.260, "[i]t is the circuit clerk's duty to tax statutory court costs." Solberg, 174 S.W.3d at 700; see also Montoya, 331 S.W.3d at 704 (citing § 514.260); Fisher, 814 S.W.2d at 631. Administrative staff, like the courts, must follow the intent of the legislature according to the law as written—and have no authority to revise it for the sake of expediency. See Henry & Coatsworth Co. v. Evans, 10 S.W. 868, 869 (Mo. 1889) ("It is our duty to give full effect to that intention when discovered, without attempting to enlarge or to restrict the legislative meaning to harmonize with any views of our own concerning its wisdom or expediency."). The trial court, therefore, erred with respect to Appellants' Count I, by determining Collector's collection of "court costs" to be lawful.

Despite the illegality of Collector's actions, Respondents assert that we should affirm the trial court's dismissal of Appellants' Count I claim for declaratory relief, because Appellants possessed an adequate remedy at law in which to seek reimbursement of "court costs" under section 514.270. Thus, they contend, declaratory relief was improper. We do not find section 514.270 to provide Appellants with an "adequate" remedy to challenge Collector's actions.

Under Missouri's Declaratory Judgment Act (the "Act"), circuit courts have the authority to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." § 527.010. The Act is remedial and "its purpose is to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Crown Diversified Holdings, LLC v. St. Louis Cnty., 452 S.W.3d 226, 230 (Mo. App. E.D. 2014) (quoting § 527.010). Nevertheless, the Act is not a general panacea for all real and imaginary legal ills. Id. at 231. "[E]xcept in exceptional circumstances plainly

20

appearing, it is not to be used and applied where an adequate remedy already exists." Cronin v. State Farm Fire & Cas. Co., 958 S.W.2d 583, 587 (Mo. App. W.D. 1997).

As explained above, sections 514.260 and 514.270 provide a litigant with the right to challenge a bill of costs unlawfully assessed by the clerk. These statutes, however, do not contain any language indicating a litigant may challenge the collection of costs paid to someone other than the clerk. Under the circumstances, therefore, section 514.270 does not provide an adequate remedy with respect to challenging the lawfulness of *Collector's* demand and collection of "court costs," particularly when Collector did not retain possession of the funds. See Matthey v. St. Louis Cnty., 298 S.W.3d 903, 907 (Mo. App. E.D. 2009) (holding action of replevin to be inadequate remedy when defendant is no longer in possession of property at issue).

Accordingly, the court erred in dismissing Appellants' Count I claim for declaratory relief against Collector. We reverse the judgment of the trial court as it relates to Appellants' Count I claim for declaratory relief against Collector, and remand with instructions to enter declaratory judgment in favor of Appellants in a manner consistent with this opinion. Point III is granted in part.

E.     Respondents' Motion to Dismiss Appellants' Point IV

As a final matter, Respondents have moved, unopposed, to strike and dismiss Appellants' Point IV for failure to comply with Rule 84.04(d) and (e). Appellants' Point IV reads, in its entirety: "[a] class action is a superior method of addressing the thousands of cases in which taxpayers are entitled to refunds under [section] 514.270." Appellants fail to cite any authority in support of this assertion. We agree with Respondents and strike Point IV from this appeal.

As required by Rule 84.04(d), Appellants' Point Relied On does not identify which trial court ruling or action Appellants seek to challenge, and fails to identify any legal authority or

explain why, in the context of the case, such authority supports the assertion that "a class action is a superior method of addressing the thousands of cases in which taxpayers are entitled to refunds . . . ." See In re Marriage of Shumpert, 144 S.W.3d 317, 320 (Mo. App. E.D. 2004); Waller v. A.C. Cleaners Mgmt., Inc., 371 S.W.3d 6, 11 (Mo. App. E.D. 2012). Appellants' argument, as required by Rule 84.04(e), also fails to cite any legal authority, explain why none is available, or explain how the law interacts with the facts of this case to support their position. See Boyd v. Boyd, 134 S.W.3d 820, 825 (Mo. App. W.D. 2004).[16] Furthermore, during appellate arguments, Appellants' counsel orally conceded that he is not appealing the court's denial of class certification. Consequently, Respondents' motion to dismiss is granted. Point IV is ordered stricken from this appeal.[17]

## CONCLUSION

We reverse the trial court's judgment in part, vacate in part, and remand with instructions. The trial court lacked the statutory authority to determine Appellants' Count I claim for declaratory relief against Circuit Clerk as well as their Count II claim seeking a refund of "court costs" against both Respondents under section 514.270. Section 514.270 provides that the exclusive remedy for seeking review of a clerk's bill of costs and a refund of unlawfully charged "court costs" must be by motion to the trial court where the costs were assessed. We therefore vacate the trial court's judgment and remand with instructions to dismiss, without prejudice,

[16] Additionally, Appellants' argument fails to include a concise statement of the applicable standard of review, and several assertions made do not contain "specific page references to the relevant portion of the record on appeal," as required by Rule 84.04(e).

[17] Respondents also contend the trial court has not yet issued a final decision on the issue of class certification, therefore, the matter raised in Point IV is not ripe for our review. Generally, for a judgment to be final and appealable, it must dispose of all claims and issues as to all parties. Avidian v. Transit Cas. Co., 20 S.W.3d 521, 523 (Mo. banc 2000). Here, the record shows that the trial court's judgment, *together* with its interlocutory order denying Wiley's request for class certification, disposed of all of the claims and issues presented by Appellants. Specifically, the trial court's judgment dismissed all of Mittelstadt's claims under the voluntary payment doctrine, which necessarily included *her* claim requesting class certification and *her* designation as a class representative. Wiley, therefore, remained as the only party-plaintiff requesting class certification and designation as a class representative. However, the trial court already issued an interlocutory order denying Wiley's request for class certification. Therefore, the trial court's judgment was final for purposes of our review.

22

Appellants' Count I claim for declaratory relief against Circuit Clerk and Count II claim for a refund against both Respondents under section 514.270.

However, because section 514.270 only applies to a review of Circuit Clerk's bill of costs, the trial court was not barred from determining Appellants' Count I claim for declaratory relief against Collector. The court erred in dismissing Mittelstadt's Count I claim under the voluntary payment doctrine and in determining Collector's assessment and collection of "court costs" against Wiley to be lawful. We therefore reverse the judgment as it relates to Appellants' Count I claim against Collector, and remand with instructions to enter declaratory judgment in favor of Appellants on this claim. As a final matter, because the trial court erred in applying the voluntary payment doctrine to bar Mittelstadt's Count I claims, Appellants' request for class-certification under Count I must also be revisited with respect to the issue of whether Mittesltadt may serve as a named representative of the purported class. We therefore remand with instructions that the trial court address, in a manner consistent with this opinion, Appellants' request for class certification in their Count I claim against Collector. We affirm the judgment in all other respects.

_____
Lisa S. Van Amburg, Chief Judge

Lawrence E. Mooney, P.J. and
Clifford H. Ahrens, Senior J. concur.