Janet CHOCHOROWSKI, Individually and as the Representative of a Class of Similarly–Situated Persons, Appellant,

v.

HOME DEPOT U.S.A., d/b/a The Home Depot, Respondent.

No. SC 92594.

Supreme Court of Missouri, En Banc.

July 30, 2013.

Phillip A. Bock, James M. Smith, Bock & Hatch LLC in Chicago, Mark L. Brown, SL Chapman LLC, St. Louis, for Chochorowski.

S. Stewart Haskins, King & Spaulding LLP, Atlanta, John C. Holstein, Lauren E. Tucker McCubbin, Polsinelli Shughart PC, Kansas City, and Russell K. Scott, Greensfelder, Hemker & Gale PC, Belleville, Ill., for Home Depot.

Jason R. Scheiderer, SNR Denton U.S. LLP, Kansas City, Deborah J. La Fetra, Sacramento, for the Pacific Legal Foundation.

PATRICIA BRECKENRIDGE, Judge.

Janet Chochorowski filed a class-action lawsuit against Home Depot, claiming that Home Depot violated the Missouri Merchandising Practices Act (MMPA), section 407.010 *et seq.*,[1] by automatically including a damage waiver fee in its tool rental agreement that Ms. Chochorowski signed when she rented a garden tiller. She also claimed the tool rental contract did not make clear that the damage waiver fee was optional and the damage waiver was of no value, allegedly unfair practices in violation of the MMPA. Home Depot filed a motion for summary judgment, which the trial court sustained. Ms. Chochorowski appealed. After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10. Because the damage waiver in the rental contract was clearly optional and provided a benefit of value to Ms. Chochorowski, the undisputed material facts show that Home Depot did not engage in any unfair practice prohibited by MMPA and is entitled to judgment as a matter of law. The trial court's judgment is affirmed.

## Factual and Procedural Background

On April 27, 2002, Janet Chochorowski and her husband went to a Home Depot store in Brentwood to rent a garden tiller. Before renting the tiller to Ms. Chochorowski, a Home Depot employee presented her with a rental agreement for the tiller.

At the top of the first page of the rental agreement was personal information for Ms. Chochorowski that had been stored in Home Depot's computer system from previous transactions and printed onto the form. As Ms. Chochorowski reviewed the agreement, she noticed that the address and driver's license information printed on the form was out of date. She wrote her current address next to the out-of-date address, lined through and corrected the state designation next to the driver's license number, and lined through and corrected her address in a second place on the form.

Below Ms. Chochorowski's personal information was a description of the equipment being rented and fees for the possible terms of the rental. On the lower half of the first page of the rental agreement was a box titled "SPECIAL TERMS AND CONDITIONS." To the right of the box were listed the charges Ms. Chochorowski was incurring. Specifically, the charges were an "agreement subtotal" charge of $25 that was the per-day rental fee, a "damage waiver" charge of $2.50, sales tax in the amount of $1.83, and an estimated total of $29.33.

The terms and conditions inside the box, which appear on all standard Home Depot tool rental agreements, read as follows:

1. I HAVE BEEN OFFERED OPERATING MANUALS ON THE ABOVE LISTED RENTAL EQUIPMENT AND HAVE ACCEPTED THEM.

2. I ACCEPT THE BENEFIT OF THE DAMAGE WAIVER (IF APPLICABLE) DESCRIBED IN PARAGRAPH 11 IN THE TERMS AND CONDITIONS OF THE RENTAL AGREEMENT.

3. A CLEANING CHARGE OF $25.00 WILL BE ASSESSED IF THE ABOVE LISTED RENTAL EQUIPMENT IS NOT RETURNED CLEAN.

I HAVE READ AND AGREE, AS INITIALED TO THE RIGHT, TO THESE SPECIAL TERMS AND CONDITIONS.

Paragraph 11, referenced in the second enumerated paragraph in the box, ap-

---

1. All citations to statute herein are to RSMo 2000 unless otherwise indicated.

peared on the agreement's second page and stated:

> If I pay the damage waiver charge for any Equipment, this agreement shall be modified to relieve me of liability for accidental damage to it, but not for any losses or damage due to theft, burglary, misuse or abuse, theft by conversion, intentional damages, disappearances or any loss due to my failure to care properly for such Equipment in a prudent manner (including without limitation by using proper fuel, oil and lubricants and not exceeding such Equipment's rated capacity, if applicable).

At the bottom of the box was written: "I HAVE READ AND AGREE, AS INITIALED TO THE RIGHT, TO THESE SPECIAL TERMS AND CONDITIONS." Ms. Chochorowski initialed the box in the blank provided.

Finally, at the bottom of the agreement's first page was a paragraph that also appears on all standard Home Depot tool rental agreements. The paragraph contains a merger clause, acknowledges the renter's receipt of the tool, states that the renter agrees "to the terms and conditions printed on this page and on the other page(s) of the agreement," and provides a procedure for modifying the agreement. The paragraph read:

> I understand and agree that no representative of THE HOME DEPOT is authorized to make any oral or written promise, affirmation, warranty or repre-sentation to me other than those reflected in writing in this agreement. I acknowledge that I have received the above-listed Equipment and that I agree to the terms and conditions printed on this page and on the other page(s) of the agreement. I understand and agree that this agreement cannot be modified, amended, rescinded or otherwise changed except by a writing signed by THE HOME DEPOT and me, and that I have read and understand this provision regarding modification of the agreement.

Below the paragraph on a blank provided, Ms. Chochorowski signed her name.

After initialing and signing the agreement, Ms. Chochorowski returned it to the Home Depot employee and retained a copy for herself.[2] She also gave the employee her credit card information but, pursuant to the rental agreement, she was not charged anything at that time. She and her husband left the store with the tiller.

In the car on the way home from the store, Ms. Chochorowski examined the rental agreement more carefully. For the first time, she read the special terms and conditions in the box on the first page and noticed the charge of $2.50 for the damage waiver. When she read the special terms and conditions, she understood them. The next day when she returned the tiller, she asked a Home Depot employee about the damage waiver fee and was told "by the girl at the counter that it was insurance,

**2.** In Ms. Chochorowski's petition, she alleged that Home Depot did not provide her with a copy of the agreement at the time she rented the garden tiller. At oral argument before this Court, she asserted that she did not receive the agreement's second page at that time. However, the record before the trial court when it ruled on Home Depot's motion for summary judgment was Ms. Chochorowski's deposition testimony that she first noticed the special terms and conditions box and the damage-waiver charge when she read the agreement on her way home from the store. In response to the specific question whether she received the second page of the agreement, she testified that she did not remember. Additionally, by signing the agreement's first page, Ms. Chochorowski acknowledged, in part, that she agreed to terms and conditions on "the other page(s) of this agreement," including paragraph 11.

and that they charge everybody this insurance. That if I would have damaged the tiller or did anything to it, it would have been covered. And I said, but I didn't damage it." Ms. Chochorowski paid the bill without asking that the damage waiver fee be removed.

In March 2008, Ms. Chochorowski filed a class action petition against Home Depot in Madison County, Illinois. The petition included two counts. Count I alleged that Home Depot violated the Missouri Merchandising Practices Act ("MMPA") by deceiving Ms. Chochorowski into believing that the damage waiver charge was not optional. Count II alleged that Home Depot violated the MMPA by imposing automatically the damage waiver charge, which Ms. Chochorowski claimed was worthless. On Home Depot's motion, the case was dismissed on the basis of *forum non conveniens*. Ms. Chochorowski refiled the case in St. Louis County. Home Depot filed a notice of removal to federal district court. In federal court, Ms. Chochorowski moved to remand the case back to St. Louis County. The federal district court sustained her motion. *Chochorowski v. Home Depot USA*, 585 F.Supp.2d 1085, 1096 (E.D.Mo.2008).

In St. Louis County circuit court, Home Depot moved to dismiss both counts of Ms. Chochorowski's petition for failure to state a claim. The circuit court granted its motion. The court of appeals reversed, finding that the circuit court, in evaluating Home Depot's motion, had considered materials outside Ms. Chochorowski's petition, namely the rental agreement and damage waiver. *Chochorowski v. Home Depot USA, Inc.*, 295 S.W.3d 194, 198–99 (Mo.App.2009). The court of appeals remanded the cause to the circuit court. *Id.* at 199. On remand, Home Depot moved for summary judgment, claiming that the written terms of the rental agreement and

its damage waiver provisions contradicted and disproved Ms. Chochorowski's allegations. The circuit court sustained Home Depot's motion for summary judgment and entered a final judgment in its favor.

Ms. Chochorowski appealed. After opinion by the court of appeals, this Court granted transfer. On appeal, Ms. Chochorowski claims that the circuit court erred in granting summary judgment for Home Depot because Home Depot automatically included the damage waiver charge in its tool rental contracts and required her to insist on its removal, in violation of the MMPA and 15 CSR 60–8.060. She also claims that Home Depot's form contract did not make clear that the damage waiver charge was optional and that the damage waiver was worthless.

## Standard of Review

 This Court's review of summary judgment is *de novo*. *Roberts v. BJC Health System*, 391 S.W.3d 433, 437 (Mo. banc 2013). On review, the record is viewed in the light most favorable to the party against whom judgment was entered. *Id.* A defendant is entitled to summary judgment if the defendant demonstrates, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* This can be done by showing (1) facts negating any one of the claimant's elements necessary for summary judgment; (2) that the claimant, after an adequate period of discovery, has not been able to and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support the defendant's properly pleaded affirmative defense. *Id.*

## Damage Waiver Not a Negative Option

 Ms. Chochorowski claims that Home Depot's tool rental agreement auto-

matically included a damage waiver fee in violation of section 407.020 of the MMPA and 15 CSR 60–8.060. The MMPA was enacted by the legislature to protect consumers. *Huch v. Charter Commc'ns, Inc.,* 290 S.W.3d 721, 724 (Mo. banc 2009). Specifically, section 407.020 was intended to " 'supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions.' " *Id.* (quoting *State ex rel. Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 368 (Mo.App. 1973)). The MMPA makes unlawful "[t]he act, use or employment … of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise…." Section 407.020.1. Although deceptive practices are not defined in the MMPA, the act empowers the attorney general to promulgate rules necessary to administer and enforce it. Section 407.145.

■ One of the rules promulgated by the attorney general is 15 CSR 60–8.020(1), which defines an unfair practice as a one that "(A) [e]ither —1.[o]ffends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; **or** 2.[i]s unethical, oppressive or unscrupulous; **and** (B) [p]resents a risk of, or causes, substantial injury to consumers." 15 CSR 60–8.020(1) (emphasis added). Another rule promulgated by the attorney general under the MMPA is 15 CSR 60–8.060, titled "Unsolicited Merchandise and Negative Option Plans," which states: "[i]t is an unfair practice for any seller in connection with the advertisement or sale of merchandise to bill, charge or attempt to collect payment from customers, for any merchandise which the customer has not ordered or solicited." A rule properly adopted and promulgated by the attorney general has independent power as law. *Huch,* 290 S.W.3d at 725. Therefore, "the act of charging for unsolicited merchandise is an unfair practice [that is] unlawful under the act." *Id.*

Ms. Chochorowski claims that Home Depot's damage waiver is a "negative option" prohibited by 15 CSR 60–8.060 because it requires payment of a fee for a service she did not solicit. The act defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services." Section 407.010(4). It defines "sale" as "any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit." Section 407.010(6). Home Depot does not contest that Ms. Chochorowski's rental of the garden tiller and the damage waiver from Home Depot is a sale of merchandise under the act or that it charged Ms. Chochorowski a fee for the damage waiver. The only disputed issue is whether Ms. Chochorowski ordered or solicited the damage waiver.

■ The sales clerk did not discuss the damage waiver with Ms. Chochorowski prior to presenting her with Home Depot's rental agreement, so the issue is whether the terms of the written agreement demonstrate, as a matter of law, that Home Depot did not charge Ms. Chochorowski for a damage waiver that she did not order or solicit. In considering the language of Home Depot's rental agreement, the primary rule of contract interpretation is that courts seek to determine the parties' intent and give effect to it. *Triarch Indus., Inc. v. Crabtree,* 158 S.W.3d 772, 776 (Mo. banc 2005). The parties' intent is presumed to be expressed by the plain and ordinary meaning of the language of the contract. *Id.* When the language of a con-

tract is clear and unambiguous, the intent of the parties will be gathered from the contract alone, and a court will not resort to a construction where the intent of the parties is expressed in clear and unambiguous language. *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428–29 (Mo. banc 2003).

The initial reference to the damage waiver in the rental agreement is on its first page. On that page, in a box titled "SPECIAL TERMS AND CONDITIONS," the agreement provides, "I ACCEPT THE BENEFIT OF THE DAMAGE WAIVER (IF APPLICABLE) DESCRIBED IN PARAGRAPH 11 IN THE TERMS AND CONDITIONS OF THIS RENTAL AGREEMENT." Paragraph 11 of the terms and conditions appears on the next page and provides, "If I pay the damage waiver charge for any Equipment, this agreement shall be modified to relieve me of liability for accidental damage to it." These two provisions unambiguously provide that a customer wishing to be relieved of liability for accidental damage to a rented tool could accept the benefit of the damage waiver by paying the damage waiver charge.

Additional provisions of the rental agreement reinforce the parties' intent that the damage waiver is a provision in the contract that the customer must accept affirmatively. The agreement requires the customer to accept affirmatively the waiver's benefits by initialing in a provided blank. The blank is within the special terms and conditions box and follows the statement "I HAVE READ AND AGREE, AS INITIALED TO THE RIGHT, TO THESE SPECIAL TERMS AND CONDITIONS." [3] To the right of the special terms and conditions box, the agreement sets out a charge of $2.50 for the damage waiver that is listed separately from the $25 per-day rental fee and the $1.83 sales tax.

Nevertheless, Ms. Chochorowski argues that by printing the rental agreement and presenting it to her, Home Depot required her to elect affirmatively not to purchase the damage agreement, which she characterizes as an unfair practice prohibited by the MMPA. She asserts that Home Depot should not be permitted "to use the fine print in its adhesion contract to nullify the express provisions of 15 CSR 60–8.060." The only authority she cites in support of her argument is this Court's decision in *Huch v. Charter Communications, Inc.* 290 S.W.3d 721 (Mo. banc 2009).

In *Huch,* a cable television provider began sending paper television programming guides to its customers, even though the customers did not request that product. *Id.* at 723. Without any notice to the customers, the cable provider billed its customers for the unsolicited guides by including a fee on the customers' monthly bills. *Id.* The actions of the cable television provider did not permit the customers to accept or decline the guides and the applicable charge. *Id.* Two customers sued as class representatives, claiming that the cable provider's act was a negative option under the MMPA and 15 CSR 6–08.060 and seeking monetary damages including punitive damages. *Id.* The cable provider moved to dismiss the case, asserting that because the customers paid their monthly bill, which included the charge for the unsolicited guides, the customers' claims were barred under the equitable

---

3. In addition to the damage waiver, the box also asked Ms. Chochorowski to acknowledge that she had been offered and had accepted operating manuals for the equipment she was renting and that she would be charged a $25 cleaning fee if she did not return the equipment clean.

"voluntary payment" doctrine. *Id.* The circuit court granted the provider's motion to dismiss, and the customers appealed. *Id.*

This Court reversed the dismissal, holding that the customers' voluntary payments to the cable provider were not a bar to their action because "[t]o allow [the cable provider] to avoid liability for this unfair practice through the voluntary payment doctrine would nullify the protection of the act and be contrary to the intent of the legislature." *Id.* at 727. Ms. Chochorowski asserts that this holding supports her claim that Home Depot should not be able to utilize in its defense "the legal principle that a party to a contract has a 'duty to read the contract' before signing and cannot claim to be misled by oral statements that are contrary to the contract." This Court does not agree.

In contrast to the actions of the cable provider in *Huch*, Home Depot made an offer to rent the garden tiller to Ms. Chochorowski that she accepted, as evidenced by their written contract. The written contract presented to Ms. Chochorowski provided obvious and unambiguous notice to her of the existence of the damage waiver and that she was affirmatively expressing her intention to purchase it by initialing and signing the rental agreement. If Ms. Chochorowski did not agree to any of the terms of Home Depot's offer, she could have refused to accept its offer by not signing the rental agreement. Specifically, if she did not want to purchase the damage waiver, she could have rejected that provision of the offer by not initialing the statement in the special terms and conditions box stating that she had read and agreed to the special terms and conditions.

Contrary to Ms. Chochorowski's claim that customers would not know they could decline the damage waiver when renting tools from Home Depot, there was undisputed evidence that, when Home Depot customers declined the damage waiver, a different contract was generated expressly stating that the customer "DECLINED THE BENEFITS" of the damage waiver and that, through Home Depot's 2005 fiscal year, customers in over 40,000 transactions in Missouri declined the damage waiver.

 There is no conflict between the intention of the legislature in enacting the MMPA and the application of the basic tenets of contract law to the transaction in this case. While Ms. Chochorowski wants relief from her failure to read the rental agreement before she executed it, she is held to the terms of the contract she signed despite her failure to read it. A signer's failure to read or understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract. *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 509 n. 4 (Mo. banc 2012) (citing *Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo. banc 1972)). *See also Nunn v. C.C. Midwest*, 151 S.W.3d 388, 402 (Mo.App.2004) (stating that a party who claims to have signed a contract without reading or understanding it is nevertheless charged with knowledge of its contents); *Binkley v. Palmer*, 10 S.W.3d 166, 171 (Mo.App.1999) (finding a party who claimed not to have read or understood documents from a real estate broker is nevertheless charged with knowledge of the documents the party signs). This Court presumes Ms. Chochorowski knew the agreement's terms and accepted them. *Wallach v. Joseph*, 420 S.W.2d 289, 294 (Mo.1967); *Cowbell, LLC v. Borc Bldg. & Leasing Corp.*, 328 S.W.3d 399, 406 (Mo. App.2010).

Though Ms. Chochorowski asserts that the contract's "fine print" should not permit Home Depot to evade the MMPA's consumer protections, the executed agree-

ment itself contradicts Ms. Chochorowski's assertion that she had difficulty reading the contract's "itty bitty print." When she reviewed the agreement in the store before signing it, she recognized the address at the top of the contract was incorrect and wrote her correct address next to it. She also noticed that the form printed an incorrect address in a second place next to incorrect driver's license information. Her address and driver's license number were printed in a font the same size and style as the terms of the damage waiver just a few lines below. She corrected the address a second time and corrected the driver's license information. Ms. Chochorowski's edits show the print was of sufficient size that she was able to read and understand these portions of the contract and correct it when necessary. While the provisions in paragraph 11 were in smaller print, they were in the same font size as most of the provisions on page 2.

Additionally, there was evidence that Ms. Chochorowski noticed the damage waiver and its related fee when she further examined the contract in her car after leaving the store. She conceded that, on reading it, she understood its meaning. Ms. Chochorowski's clearer understanding of the damage waiver and fee on reading the contract on the drive home shows that her election of the damage waiver was either a deliberate choice or an oversight for which she is responsible and not a defect of the contract itself.

■ Home Depot offered Ms. Chochorowski the damage waiver and explained its benefits to her in the separate box on the agreement's front page that required her initials to elect the damage waiver and in paragraph 11 on the second page. She elected it and agreed to pay the damage waiver fee by initialing the special terms and conditions and signing the agreement. Moreover, she consented to the agree-

ment's terms, including the damage waiver, a second time by signing her name at the bottom of the agreement's first page. The agreement provided that, by signing, Ms. Chochorowski "agree[d] to the terms and conditions printed on this page and on the other page(s) of this agreement." The damage waiver, therefore, is not a negative option under the MPAA.

### Damage Waiver Clearly Optional

■ Ms. Chochorowski also claims that Home Depot's rental agreement did not disclose that the damage waiver was optional. She acknowledges that the terms and conditions required her to pay the damage waiver fee only "if applicable" but argues that the phrase "if applicable" discourages any effort to read further and does not suggest a party has any choice in the matter. She also acknowledges the box labeled "SPECIAL TERMS AND CONDITIONS" refers to paragraph 11 on the second page, which includes a more comprehensive description of the charge, but claims the terms in the box do not suggest the damage waiver is optional and argues paragraph 11 is virtually illegible and "buried on the second page." Finally, she argues that she believed she could not avoid paying the damage waiver fee because a Home Depot employee told her the company "charges everybody" the fee.

■ This Court will construe a contract as a whole so as not to render any terms meaningless. *State ex rel. Riverside Pipeline Co., L.P. v. Public Service Com'n*, 215 S.W.3d 76, 84 (Mo. banc 2007). A construction that gives a reasonable meaning to each term and harmonizes all provisions is preferred over a construction that renders some provisions without function or sense. *Id.*

In this case, the agreement's first mention of the damage waiver, in the box labeled "SPECIAL TERMS AND CON-

DITIONS," which Ms. Chochorowski initialed, states that the person renting the tool will accept the benefit of the damage waiver "(IF APPLICABLE)" as described in paragraph 11 on the next sheet. Paragraph 11 states, "If I pay the damage waiver charge for any Equipment, this agreement shall be modified to relieve me of liability for accidental damage to it. . . ."

While Ms. Chochorowski is correct that these provisions do not expressly state the damage waiver is "optional," it is clear from the plain and ordinary meaning of the language used, when the contract is considered as a whole, that the parties intended the damage waiver to be optional. *State v. Nationwide Life Ins. Co.*, 340 S.W.3d 161, 182 (Mo.App.2011) (a reviewing court relies on the plain and ordinary meaning of the words in the contract and considers the document as a whole to determine the parties' intent). Both the box Ms. Chochorowski initialed and the fuller explanation of the damage waiver on the next page indicate that the damage waiver's benefits and fee were conditioned on her electing the waiver. The phrase "if applicable" suggests that there are some circumstances under which the damage waiver does not apply. Likewise, the phrase "if I pay the damage waiver" suggests that a customer is permitted not to pay the damage waiver. When read together, these conditional statements make clear that the party renting a tool may elect the damage waiver option or decline it. Any interpretation to the contrary would render these conditional statements meaningless. This Court will avoid such a construction of a contract's terms. *Dunn Indus. Group*, 112 S.W.3d at 428. Therefore, the rental agreement unambiguously contradicts Ms. Chochorowski's claim that she had no choice but to accept the waiver and pay the fee.

Ms. Chochorowski argues that even if the language of the rental agreement notified her that the damage waiver was optional, she could not have declined it because, when she asked about the nature of the charge, a Home Depot employee told her it was "insurance" and that "everybody gets charged" the fee. The employee's statement could not have modified the agreement or misled Ms. Chochorowski, however, because the statement was made after the transaction was completed except for her payment of the rental fees. Ms. Chochorowski made her inquiry about the damage waiver after she had used the garden tiller and was returning the unbroken tiller the next day. At that point, she could not have declined the damage waiver because she had received the benefit of it. Having received the benefit of the waiver, she was required to pay for it. *See 21 West, Inc. v. Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 879 (Mo.App.1995) ("Where a contractual party has fully performed its obligations under [a] contract, that party has a vested right to performance by the other party in accordance with the contract's terms.").

Additionally, the rental agreement also expressly stated that it is the parties' entire agreement and could not be changed without the parties' mutual consent. It further stated that "no representative of THE HOME DEPOT is authorized to make any oral or written promise, affirmation, warranty or representation to me other than those reflected in writing in this agreement." In light of these provisions, any representations the Home Depot employee made to Ms. Chochorowski could not alter the rental agreement's unambiguous description of the damage waiver as an option that she was free either to elect or decline.

### Damage Waiver Confers a Benefit of Value

Finally, Ms. Chochorowski claims that the damage waiver was of no

value and that selling something of no value is a violation of the MMPA's prohibition against unfair practices. She argues that the rental agreement's terms provide no clear coverage, rendering the waiver's benefits illusory.

■ Unlike the clear ban on negative options in 15 CSR 60–8.060, there is no corresponding regulation that expressly makes selling merchandise of no value an unfair practice under the MMPA. Assuming, without finding, that selling worthless merchandise is an unfair practice under the MMPA, Ms. Chochorowski cannot show that Home Depot's damage waiver is worthless. On its face, the damage waiver purports to relieve customers that elect its coverage from "accidental damage to [the rented tool], but not for any losses or damage due to theft, burglary, misuse or abuse, theft by conversion, intentional damages, disappearances or any loss due to" negligence. Ms. Chochorowski argues that the liability exceptions listed in the rental agreement leave the customer who elects the damage waiver with no enforceable protection against loss.

■ This Court has addressed the question of whether particular events are "accidents" under liability insurance policies. The key question in such cases is "whether the insured foresaw or expected the injury or damages." *D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.,* 316 S.W.3d 899, 905 (Mo. banc 2010); *see also Todd v. Mo. United Sch. Ins. Council,* 223 S.W.3d 156, 162 (Mo. banc 2007) (interpreting the term "accident" in its ordinary sense, as an event neither expected nor intended by the covered party). An accident does not include expected or foreseeable damages. *D.R. Sherry Const.,* 316 S.W.3d at 905.

This Court's applied definition is consistent with other authority that has defined "accident" in an insurance context as "an

event which takes place without one's foresight or expectation." 1A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 360, at 455 (rev.vol.1981), *quoted in Black's Law Dictionary* 16 (9th ed.2009). Accident may also be "an occurrence which is unforeseen, unexpected, extraordinary, either by virtue of the fact that it occurred at all, or because of the extent of the damage." John F. Dobbyn, *Insurance Law in a Nutshell* 128 (3d ed.1996), *quoted in Black's Law Dictionary* 16 (9th ed.2009). The term "accidental damages" is therefore one of legal significance the meaning of which has been recognized and applied consistently by this Court and other authority.

■ The provisions in Home Depot's rental agreement that exclude coverage for damage other than accidental damage do not render the damage waiver's protections illusory. In *Todd,* this Court examined a liability policy that provided coverage for accidents but not "liability of an insured who knowingly committed an unlawful act … or who intentionally caused damage, harm, or injury." *Todd,* 223 S.W.3d at 162 (omission in original). This Court found that the policy was not ambiguous and, though in that case the policy operated to deny a payout for an intentional act, this Court noted that the policy would have limited an insured's liability for other acts that were accidental in nature. *Id.* at 163–64; *cf. D.R. Sherry Const.,* 316 S.W.3d at 906 (accidental damage insurance policy commits insurer to pay damages within policy's terms). Exclusions therefore provide valid liability coverage limits but do not render the remaining liability coverage illusory.

To support her claim that the waiver's benefits are illusory, Ms. Chochorowski also cites deposition testimony offered by a Home Depot employee that the damage

**232**

waiver meant only that if a customer who paid the damage waiver fee damaged a tool Home Depot "is going to work with that customer." This assertion cannot alter the plain and unambiguous meaning of the damage waiver itself. *Dunn Indus. Group,* 112 S.W.3d at 428 ("Extrinsic evidence may not be introduced to vary or contradict the terms of an unambiguous agreement or to create ambiguity."). The damage waiver unambiguously covers damage caused by accident, conferring a benefit of value on the insured that is not rendered illusory by the waiver's liability exclusions.

### Conclusion

Home Depot offered Ms. Chochorowski the benefit of the damage waiver in its rental agreement. Though Ms. Chochorowski elected the damage waiver's benefit by initialing the agreement's special terms and conditions and signing the agreement, the agreement itself made clear that she had the option to decline the waiver. Because Ms. Chochorowski was free to elect or decline the damage waiver, the waiver is not a negative option under the MMPA. Additionally, the damage waiver's plain language confers a real benefit on a customer who elects the waiver by relieving the customer of liability for accidental damage to the rented tool, so it does not violate the act or regulations enacted pursuant thereto. The circuit court's grant of summary judgment for Home Depot is affirmed.

RUSSELL, C.J., FISCHER, STITH and TEITELMAN, JJ., concur.

DRAPER and WILSON, JJ., not participating.