In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO
JERSEYVILLE MALL, L.L.C., ) No. ED109357
 )
 Appellant, )
 ) Appeal from the Circuit Court
 ) of St. Louis County
 vs. ) Cause No. 19SL-CC00593
 )
SHOP ‘N SAVE WAREHOUSE FOODS, INC.,) Honorable Kristine Allen Kerr
 )
 Respondent. ) Filed: September 21, 2021

 OPINION

 This appeal involves the interpretation of a complex, decades-old lease agreement for a

retail store location in Jerseyville, Illinois. The property owner, Appellant Jerseyville Mall,

L.L.C. (Jerseyville), alleges that the tenant, Respondent Shop ‘N Save Warehouse Foods, Inc.

(Shop ‘N Save), breached the lease by ceasing operations and notifying Jerseyville that the lease

was terminated. Shop ‘N Save contends that termination was proper under the terms of the lease.

The issue was presented to the trial court on cross motions for summary judgment, and the trial

court decided in favor of Shop ‘N Save. Jerseyville appeals, and we affirm.

 Facts and Procedural Background

 The parties’ lease agreement was originally entered in 1978 by Jerseyville and Shop ‘N

Save’s predecessor and has been extended and modified on numerous occasions. Two of the

instruments extending and modifying the lease contain the key language pertinent to this appeal.

 1
In the first of these instruments, entered in 1999 (the 1999 Agreement1), Shop ‘N Save agreed to

exercise two five-year extension options, continuing the lease to 2010. The 1999 Agreement also

contained two paragraphs relating to termination of the lease. Section 3 of the 1999 Agreement

provides:

 Shop ‘N Save hereby exercises its right to renew the Lease for the first and
 second five-year renewal terms PROVIDED HOWEVER, that Shop ‘N Save
 shall have the right to terminate the Lease, at any time during such first or second
 renewal terms, upon thirty days written notice. It is agreed and understood that, by
 so exercising its [sic] right to renew the Lease for such terms, Shop ‘N Save does
 not, in any way, warrant or represent that it will remain in operation during any
 such term.

And § 4 provides:

 In the event Shop ‘N Save closes or shuts down the operation of the grocery store,
 the lease shall be deemed immediately terminated or in any event terminated no
 later than 30 days after Shop ‘N Save ceases operation of the grocery store and
 Shop ‘N Save shall vacate the premises within 30 days of such termination of
 store operation.

 A subsequent instrument containing language we are asked to interpret was entered in

2014 (the 2014 Amendment). In that document, Shop ‘N Save agreed to “irrevocably exercise” a

further five-year renewal option, extending the lease from November 1, 2015 through October

31, 2020. In the same agreement, Jerseyville consented to allow Shop ‘N Save to make certain

structural changes to the property. The 2014 Amendment expressly set forth that it extended the

existing “Lease,” which it defined to include “the Base Lease and the 1999 Agreement” as well

as other extensions and modifications entered over the years. It further provided that “[e]xcept as

amended hereby, the Lease shall remain unchanged . . .”

1
 The 1999 Agreement was denominated a “Settlement Agreement and Release,” and settled previous litigation
between the parties.

 2
 On November 14, 2018, Shop ‘N Save ceased operations at the Jerseyville location. On

November 30, it sent a notice to Jerseyville informing it that operations had ceased and stating

that it would vacate the premises by December 31, 2018, at which time, Shop ‘N Save wrote, the

lease would be “deemed terminated.” On December 14 Jerseyville responded, taking the position

that Shop ‘N Save’s actions were a breach and repudiation of the lease.

 Jerseyville filed suit against Shop ‘N Save alleging anticipatory and actual breach of the

lease. The parties filed cross-motions for summary judgment. On October 30, 2020 the circuit

court granted Shop ‘N Save’s motion for summary judgment and denied Jerseyville’s motion.

This appeal followed.

 Standard of Review

 The propriety of summary judgment is an issue of law, and this Court’s review of a grant

of summary judgment is essentially de novo. ITT Com. Fin. Corp. v. Mid-Am. Marine Supply

Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The court “review[s] the record in the light most

favorable to the party against whom judgment was entered.” Id. Summary judgment is proper

only if the moving party establishes there is no genuine issue of material fact and the movant is

entitled to judgment as a matter of law. Id. at 382; see also Rule 74.04.2 A genuine issue exists

when the record contains competent materials that evidence two plausible, but contradictory,

accounts of the essential facts. ITT Com. Fin. Corp., 854 S.W.2d at 382. A genuine issue is a

dispute that is real, not merely argumentative, imaginary, or frivolous. Id. The Court accords the

non-movant the benefit of all reasonable inferences from the record. Id. at 376.

2
 All references are to Missouri Supreme Court Rules (2021).

 3
 Discussion

 Contract Interpretation Under Missouri Law

 When interpreting lease agreements, we follow the rules of construction governing

contract. Brittany Sobery Fam. Ltd. P'ship v. Coinmach Corp., 392 S.W.3d 46, 50 (Mo. App.

E.D. 2013). Under Missouri law, “the primary rule of contract interpretation is that courts seek to

determine the parties’ intent and give effect to it.” Chochorowski v. Home Depot U.S.A., 404

S.W.3d 220, 226 (Mo. banc 2013) (citing Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776

(Mo. banc 2005)). This process starts with examining the plain language of the agreement to

determine whether it clearly addresses the issue at hand. Brittany Sobery Fam. Ltd. P’ship, 392

S.W.3d at 50 (citing TAP Pharm. Prod. Inc. v. State Bd. of Pharmacy, 238 S.W.3d 140, 143

(Mo. banc 2007)). Thus, so far as possible, “[t]he intention of the parties is to be gleaned from

the four corners of the contract.” L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.,

75 S.W.3d 247, 260 (Mo. banc 2002). Missouri courts construe a contract as a whole so as not to

render any terms meaningless. Chochorowski, 404 S.W.3d at 229 (citing State ex rel. Riverside

Pipeline Co., L.P. v. Pub. Serv. Comm'n of State, 215 S.W.3d 76, 84 (Mo. banc 2007)). A

construction that gives a reasonable meaning to each term and harmonizes all provisions is

preferred over a construction that renders some provisions without function or sense. Id. If the

language is clear and addresses the disputed matter, the inquiry ends. Brittany Sobery Fam. Ltd.

P’ship, 392 S.W.3d at 50.

 Interpretation of the Lease

 We begin by observing that the parties chose to present their dispute to the trial court

with a limited record and focused on the four corners of the lease documents. Neither party

contends that the lease is ambiguous, and neither adduced extrinsic evidence regarding the

interpretation of the contract language. Both parties agree that the case should be adjudicated on
 4
the basis of the lease document themselves. The lease agreement between the parties, consisting

of at least nine separate instruments negotiated by a changing cast of parties and their lawyers

over five different decades, is by no means a model of contractual drafting. But, guided by the

choice of the parties to present this case on a limited record and cross-motions for summary

judgment and restricting our review to the issues presented on appeal, we confine our

consideration to the plain language and four corners of the lease documents. See In re Marriage

of Fritz, 243 S.W.3d 484, 488 (Mo. App. E.D. 2007); Stacy v. Bar Plan Mut. Ins. Co., 621

S.W.3d 549, 565 n.6 (Mo. App. E.D. 2021).

 Turning to that language, the central question is whether Shop ‘N Save’s lease

obligations ended as a result of its ceasing operations in November 2018. In support of its

position that the lease ended, Shop ‘N Save relies on § 4 of the 1999 Agreement. On its face, the

language of § 4 is reasonably straightforward. If Shop ‘N Save closes its store, the lease “shall be

deemed immediately terminated or in any event terminated no later than 30 days after Shop ‘N

Save ceases operation . . .” Since there is no dispute that Shop ‘N Save closed its store, it follows

that the lease must be “deemed . . . terminated.”

 Jerseyville questions the use of the word “deem[]” in this provision. To “deem” means

“to treat [something] as if (1) it were really something else, or (2) it had qualities that it does not

have.” BLACK’S LAW DICTIONARY (11th ed. 2019). In other words, the word “deem” denotes a

legal fiction. Modern legal drafting authorities recommend against use of the word for precisely

this reason.3 Here however, the use of this word does not change the meaning of the provision in

3
 BLACK’S LAW DICTIONARY appropriately warns:
 “Deem” has been traditionally considered to be a useful word when it is necessary to establish a
 legal fiction . . . . All other uses of the word should be avoided . . . . “Deeming” creates an
 artificiality and artificiality should not be resorted to if it can be avoided.

 5
question. Applying the dictionary definition to the language in question, if the lease is “deemed

. . . terminated” that means that, as between the two parties who agreed to do the “deeming,” the

lease must be “treated as if it w[as] really” terminated. Since Jerseyville agreed to treat the lease

as if it was terminated in this circumstance, its claim for breach of the lease fails as a matter of

law.

 Jerseyville argues that this use of the phrase “deemed . . . terminated” in § 4 of the 1999

Agreement, when read in context, should be read to refer back to the existing termination right in

§ 3 of that agreement. We conclude that nothing in the contractual language requires this

interpretation. Applying dictionary definitions, the phrase “deemed terminated” simply means

“treated if it were ended,”4 and this straightforward reading seems appropriate here.

 Moreover, reading the provisions of § 3 and § 4 in context and in relation to the other

provisions of the parties’ agreement, we disagree with Jerseyville’s proposed construction.

Jerseyville contends that the 1999 Settlement Agreement limits Shop ‘N Save’s termination to

the initial two five-year lease extensions — 2000 to 2005 and 2005 to 2010 respectively —

because § 4 is logically linked to the restrictive conditions outlined in the preceding paragraph,

§ 3. Accordingly, Shop ‘N Save is precluded from terminating the lease at any time following the

first two renewal terms, Jerseyville contends. We disagree for at least two reasons. First, it is

highly notable that the limitation to the first two extension terms was expressly included in § 3

but not in § 4. This brings to mind the old interpretive principle that “the expression of one thing

is the exclusion of another.” Heartland Presbytery v. Gashland Presbyterian Church, 364

S.W.3d 575, 586 (Mo. App. W.D. 2012) (“expressio unius est exclusio alterius”); Gen. Am. Life

Ins. Co. v. Barrett, 847 S.W.2d 125, 133 (Mo. App. W.D. 1993) (citing 17A C.J.S.

4
 “Termination” is “[t]he act of ending something.” BLACK’S LAW DICTIONARY (11th ed. 2019).

 6
Contracts § 312 (1963)). While this canon of construction must be used with care, it is applicable

here. Because express limiting language was included in § 3 of the 1999 Agreement but not in

§ 4, a strong inference arises that the decision not to include the limitation in § 4 was intentional,

and § 4’s effect was not limited to the first two extension terms.

 Second, the 2014 Amendment extending the lease incorporates previous lease

amendments and contractual agreements including, explicitly, the 1999 Agreement. Applying

Jerseyville’s logic, at the time the parties entered the 2014 Amendment, § 4 of the 1999

agreement was unnecessary since the language references the previous lease terms and, by 2014,

outdated contractual obligations. Assuming § 4 refers to previously expired lease terms

inextricably linked to § 3, as Jerseyville now contends, it would seem meaningless and illogical

to incorporate this portion of the 1999 Settlement Agreement into the 2014 Agreement. In short,

if § 3 and § 4 were limited to the time period between 2000 and 2010, as Jerseyville argues, the

parties did not need to incorporate the 1999 agreement into the 2014 lease amendment. However,

the parties chose to do so, and our court interprets § 4 as relevant, enforceable language and

applicable to any further lease terms including, and beyond, the initial two renewable periods as

memorialized in their agreement. By incorporating the 1999 Agreement into the 2014

Amendment extending the lease, both parties accepted the contractual consequences.

 Jerseyville also argues that the termination provisions of the 1999 Agreement must be

interpreted in light of the language of the 2014 Amendment’s “irrevocabl[e] exercise” of an

option to further extend the lease. But this language, on its face, merely extends the lease; it does

not alter its terms. Again, and crucial to our analysis, the “Lease” that was extended by the 2014

Amendment was explicitly defined in that document to include not only the original 1978 lease

agreement but also “the 1999 Agreement.” Therefore, when the 2014 Amendment extended the

 7
lease, it incorporated and also extended the amendments to that lease in the 1999 Agreement,

including the key language discussed above that provides that the lease must now be “deemed

. . . terminated.”

 According to Jerseyville, this interpretation cannot be correct because it would nullify

Shop ‘N Save’s consideration for the 2014 Amendment and render the parties’ agreement

illusory. We disagree. The consideration under the 2014 Amendment was Shop ‘N Save’s

exercise of the renewal option. As a result of that exercise, the lease terms continued as they had

before and Jerseyville continued to collect rent as it had for decades. Missouri courts do not

evaluate the adequacy of the consideration; they merely determine whether consideration exists.

Soars v. Easter Seals Midwest, 563 S.W.3d 111, 116 (Mo. banc 2018). In other words, “the

general rule of freedom of contract includes the freedom to make a bad bargain.” Id. (quoting

Sanger v. Yellow Cab Co., 486 S.W.2d 477, 482 (Mo. banc 1972)). Since consideration did exist

here, however slight or inadequate Jerseyville finds it in hindsight, the lease agreement stands

and its plain language controls. Summary judgment was properly granted in favor of Shop ‘N

Save.

 Considered in Light of the Foregoing Discussion,
 Jerseyville’s Remaining Points Are Without Merit

 Jerseyville raises two additional points on appeal. Our resolution of these points is

substantially informed by our discussion of the central disputed issue in this case, above. In Point

II, Jerseyville argues that summary judgment was improper to the extent the trial court relied on

arguments made by Shop ‘N Save that were not properly supported in the summary judgment

record pursuant to Rule 74.04(c). Point III contends that Shop ‘N Save inadequately pleaded its

affirmative defenses, and that summary judgment was improper to the extent that it relied on

these defenses.

 8