

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| HUI JUN LIN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD85124 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | April 18, 2023 |
| ANN CLARK, SUCCESSOR OF | ) | |
| HSIAO LI CHANG ESTATE, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Kevin D. Harrell, Judge**

**Before Division Three:** Thomas N. Chapman, Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Ann Clark, as the successor of Hsiao Li Chang's Estate ("Chang"), appeals from

the judgment entered by the Circuit Court of Jackson County, Missouri ("trial court"), in

favor of Hui Jun Lin ("Lin") following a bench trial on Lin's breach of contract and quiet

title action.[1]  We affirm.

---

[1] During the pendency of this appeal, Hsiao Li Chang died and Ann Clark, Successor of Hsiao Li Chang's Estate, was substituted as the party-appellant pursuant to Supreme Court Rule 52.13(a).  Because all of the actions relevant to the issues on appeal were acts of Hsiao Li Chang while alive, we refer to the appellant on appeal as "Chang."

## Factual and Procedural Background[2]

In 2007, Chang purchased certain real property commonly known as 12632 Fountain Lake Circle, in Grandview, Missouri ("Property"), executing a note in the amount of $119,960, secured by a deed of trust on the Property. Thereafter, Chang, as Seller, and Lin and her then-husband, as Buyers, executed a Residential Real Estate Sale Contract ("Contract") for the Property. The Contract was signed by Lin and her husband on August 19, 2009, and by Chang on August 22, 2009. Maria Jien, a/k/a Maria Sheen ("Sheen"), of Coldwell Banker Advantage, was the transaction broker, assisting both Seller and Buyers, pursuant to a Transaction Broker Addendum to the Contract. The purchase price for the Property was $146,000, which Buyers agreed to pay as follows: earnest money deposited with Midwest Title Company, Inc. as escrow agent – $4,000; amount financed by Buyers – $96,000; balance of purchase price to be paid in cash on or before closing – $46,000. Closing was scheduled for August 28, 2009, with Chang delivering possession the same day.

Paragraph 19 of the Contract included an unusual additional term and condition as follows:

> Buyers will take over Seller's payment of mortgage plus House insurance and property tax till Buyers pay off loan on or before Sept. 1, 2014. Principal & Interest is $788.05 per month. Buyer will pay $50,000 down to Seller in order to gain 34.25% ownership on 12632 Fountain lake cir. Grandview, MO and Seller remained 65.75% ownership. . . . [sic]

---

[2] "In the appeal of [a] bench-tried case, the appellate court views the facts in the light most favorable to the trial court's judgment." *Schaffer v. Howard*, 624 S.W.3d 379, 381 n.1 (Mo. App. W.D. 2021) (internal quotation marks omitted).

The practical effect of this provision was to transfer responsibility for payment of Chang's mortgage to Buyers, and to defer Chang's transfer of 100% ownership of the Property to Buyers until that mortgage obligation was paid. The Contract included an Owner Finance Addendum that confirmed Chang would provide carry-back financing of the $96,000 portion of the purchase price Buyers needed to finance, and that payments on the carry-back financing would be made by Buyers paying Chang's mortgage payment in the amount of $788.05 per month until September 1, 2014, when a balloon payment would be due. The parties agreed that should Lin miss three consecutive monthly payments, Chang had the right to be restored to 100% ownership of the Property.

The parties executed an Amendment to the Contract on August 23, 2009. Lin's then-husband was removed from the Contract as a buyer, and Lin agreed to pay an additional earnest deposit of $20,000 to Chang on August 26, 2009. Additionally, the Amendment to the Contract confirmed that when Lin paid off Chang's mortgage, Lin would receive 100% ownership of the Property.

Chang and Lin signed a receipt on August 26, 2009, which stated that Chang "received an additional earnest money of $30,000" from Lin on that date. It is not clear from the record why Lin paid an additional earnest deposit of $30,000 when the amount contemplated by the Amendment to the Contract was $20,000. When the transaction closed on August 28, 2009, the Midwest Title Company, Inc. Settlement Statement reflected that the contract sales price was $146,000, earnest money paid by borrower was $4,000, additional earnest money paid by borrower was $30,000, and seller carryback was $96,000. The Settlement Statement reflected that Lin was required to pay additional

3

cash at closing in the amount of $14,688.04, comprised of the balance due on the purchase price and Lin's share of the prorated real estate taxes for 2006. Lin paid additional cash at closing in the amount of $16,000 with cashier's checks and money orders.

On August 31, 2009, Chang executed a Warranty Deed, conveying an undivided 65.75% interest in the Property to herself, and an undivided 34.25% interest in the Property to Lin. Another Amendment to Contract was executed post-closing by Chang and Lin on September 2, 2009, establishing an escrow account to be held by Midwest Title Company, Inc. until Lin paid the balance of Chang's loan secured by the Property, at which time the escrowed amount would be released to Lin:[3]

> THIS AMENDMENT MODIFIES THE TERMS OF THE ABOVE REFERENCED REAL ESTATE SALES CONTRACT, EXCEPT FOR THE FOLLOWING CHANGES, ALL OF THE OTHER PROVISIONS OF THE CONTRACT SHALL REMAIN IN FULL EFFECT.
>
> SELLER WILL PUT $21,000.00 OF THE $50,000 DEPOSIT[4] IN ESCROW TO BE HELD BY MIDWEST TITLE COMPANY, INC. UNTIL THE FIRST DAY OF SEPTEMBER, 2014 OR UNTIL THE BUYER COMPLETELY PAYS THE BALANCE OF THE BANK OF AMERICA LOAN AGAINST SAID PROPERTY. AT THAT TIME THE $21,000.00 WILL BE RELEASED TO SAID BUYER. BUYER AND SELLER BOTH AGREE TO SIGN A MUTUAL RELEASE AGREEMENT AND PROVIDE SAID AGREEMENT TO MIDWEST TITLE COMPANY, INC. FOR DISBURSEMENT OF ESCROWED FUNDS.

---

[3] At the time Lin purchased the Property, Chang's outstanding mortgage was actually $117,000, *see* Tr. 56; under the Contract, Lin was responsible for $96,000 of the $117,000; the difference was the $21,000 Chang placed in escrow. *See* Maria Sheen Dep. 21, 23-24 (Stipulated Ex. 100).

[4] The total cash paid by Lin at closing, including credited earnest deposits and cash delivered at closing, was $50,000.

ALL OTHER TERMS AND CONDITIONS SHALL REMAIN THE SAME.

Chang's Warranty Deed was recorded on September 10, 2009.

On November 1, 2018, Lin filed a Petition for Specific Performance, Quiet Title, Declaratory Judgment and Interpleader. She alleged that she made all the payments required under the terms of the Contract as amended, including payments due to date on Chang's mortgage loan held by a third party. She stated that she offered to pay the remaining loan amount in April 2018 but Chang refused to sign over full ownership of the Property unless Lin paid her an additional $25,000. Lin alleged that Chang's actions constituted a breach of the Contract. Lin requested that the court declare that Lin is entitled to Chang's 65.75% interest in the Property upon Lin's satisfaction of Chang's mortgage loan obligation and order Chang to transfer her interest in the Property to Lin upon Lin's satisfaction of Chang's mortgage loan obligation. She also requested that Midwest Title Company, Inc. be directed to deposit the sum of $11,728 held in escrow on the sales transaction of the Property into the registry of the court.[5]

Chang's Answer to Lin's Petition, filed December 17, 2018, included an affirmative defense of breach of contract, stating that Lin "materially breached" the Contract "by failing to pay a balloon payment for the balance due on the note on September 1, 2014."

---

[5] The trial court entered an order of dismissal on July 11, 2019, dismissing with prejudice Midwest Title Company, Inc. as a party to the action after it deposited the $11,728 with the clerk of the circuit court. It is not clear from the record why or when the $21,000 amount deposited into escrow with Midwest Title Company, Inc. post-closing was reduced to the amount pled in Lin's petition.

5

On December 31, 2018, Chang's third-party lender executed and recorded a full Deed of Release upon satisfaction of the Chang note secured by the Property.

A bench trial on Lin's Petition was held on November 15, 2021. Lin, Sheen, and Chang testified. On December 23, 2021, the trial court entered its Findings of Fact, Conclusions of Law and Judgment. The trial court found that Lin did not satisfy the full mortgage balance by September 1, 2014, as set out in the original Owner Finance Addendum. However, Lin's obligation to satisfy the mortgage by September 1, 2014, was extended by the September 2, 2009 Amendment to Contract establishing the escrow agreement and providing that the escrow agreement continued "until the first day of September, 2014 *or until the buyer completely pays the balance of the Bank of America loan against said Property*." Chang's third-party mortgage holder conveyed to Lin the full Deed of Release, dated December 31, 2018, upon complete satisfaction of all payments on Chang's debt secured by the Property. The trial court found that Chang was in breach of the Contract and that Lin was entitled to full ownership of the Property.

The trial court further found that Lin made the following payments toward the purchase of the Property:

| | | |
|---|---|---|
| a. | Deposit Earnest Money | $4,000 |
| b. | Cash Payment to Sheen | $46,000 |
| c. | Amendment Deposit | $20,000 |
| d. | Closing Deposit | $16,000 |
| e. | Adjustment closing to Lin | - $1,311.96 |
| f. | [Chang's] note | $117,000 |
| | Total | $210,688.04 |

6

The trial court awarded all funds currently held by the court pursuant to the interpleader to Lin, with such sums credited to satisfaction of the judgment.

The trial court also found that Lin overpaid the contractual amount as follows:

| | | |
|---|---|---|
| a. | Amendment Deposit | $20,000 |
| b. | Closing Deposit | $16,000 |
| c. | Escrow Deposit | $21,000 |
| | Total | $57,000[6] |

The trial court determined that, after the closing adjustment ($1,311.96) to Lin, Lin suffered damages in the amount of $55,688.04 and awarded those damages to Lin in its judgment.[7]

The trial court expressly concluded that:

- Chang breached the contract: by failing to provide full title to Lin upon full payment and satisfaction of the required payments under the Contract; and by

---

[6] At oral argument, Chang's counsel challenged the propriety of the trial court's award of the "closing deposit" and "escrow deposit" as overpayments. This was the first time on appeal that Chang raised these issues and "[w]e will not consider an issue raised for the first time at argument." *Knight v. Con-Agra Foods, Inc.*, 476 S.W.3d 355, 359 n.3 (Mo. App. W.D. 2015) (citing *McGuire v. Kenoma*, 375 S.W.3d 157, 182 n.20 (Mo. App. W.D. 2012).

[7] We note that Chang does not contest the trial court's conclusions as to Lin's contractual overpayments to Chang in any of her points on appeal; yet, Chang claims in her appellate briefing to this Court that we should reverse the trial court's judgment because Lin did not pay off Chang's mortgage on or before September 1, 2014. Thus, Chang effectively requests on appeal in her prayer for relief that she should be entitled to a full return of ownership of the Property, she should be able to reap the benefit of Lin's satisfaction of the mortgage on the Property, she should be able to keep the $55,688.04 in overpayments made by Lin pursuant to the terms of the Contract and corresponding addendums, and we should dismiss Lin's Petition. As we explain in today's ruling, Chang's legal argument as to the interpretation of the Contract and corresponding amendments to the Contract is without legal merit.

7

failing to pay the $21,000.00 in overpayments to Lin for the debt anticipated by the September 2, 2009 Amendment to Contract.

- Lin paid and Chang received substantially more than required by the Contract, and Lin was entitled to reimbursement of the excess payments.

- Lin made all payments required by the Contract and fully performed its terms.

- The September 2, 2009 Amendment to Contract did not require a balloon payment by September 1, 2014, as Lin contractually had "until the buyer completely pays the balance of [Chang's] loan against said Property."

- Even if the obligation to pay Chang's mortgage as required by the Contract had not been extended beyond September 1, 2014, pursuant to the Amendment to Contract, Chang waived and was estopped from denying Lin's performance by continuing to receive the benefit of Lin's payments to Chang's mortgage holder and payments of taxes, insurance, and homeowners' association dues beyond September 1, 2014, and until the loan was paid in full.

- Chang was barred by the doctrine of laches from claiming Lin breached the Contract while accepting the benefit of Lin's payments on Chang's loan and all other payments associated with ownership and maintenance of the Property to the extent Chang sought contractual relief by equitable principles.

The trial court quieted title to the Property in Lin's favor, and ordered that Lin "shall have full right, title, [and] interest" to the Property legally described as "Lot 51, FOUNTAIN LAKE, PHASE II-LOTS 50-69, a subdivision in Grandview, Jackson

County, Missouri, Commonly known as: 12632 Fountain Lake Circle, Grandview, MO."[8]

Chang timely appealed.

## Standard of Review

On appeal of a bench-tried case, the "judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "'Where a misapplication of the law is asserted, our review is *de novo*.'" *Stephens v. Mikkelsen*, 519 S.W.3d 437, 440 (Mo. App. W.D. 2017) (quoting *Jackson v. Mills*, 142 S.W.3d 237, 240 (Mo. App. W.D. 2004)).

"While *Murphy v. Carron* dictates this Court review the circuit court's judgment to determine if it 'erroneously declares the law . . . [or] erroneously applies the law,' erroneous declaration or application of the law is not itself sufficient to justify reversal." *Lollar v. Lollar*, 609 S.W.3d 41, 47 (Mo. banc 2020) (citation omitted). "This Court will

---

[8] "A judgment which affects title to real estate must describe the land in question with enough certainty to support a later conveyance of the property." *Creech v. Noyes*, 78 S.W.3d 223, 225 (Mo. App. E.D. 2002) (citation omitted). "The judgment should be in a form so that it alone is suitable for recording in real estate records." *Id.* (citation omitted).

During oral argument, Chang conceded that the trial court's judgment awarding title to the Property in Lin's favor was not erroneous. We have nonetheless explained why the trial court's quiet title award of title to the Property in favor of Lin was lawful to avoid any confusion when Lin presents the underlying judgment and/or our ruling today to establish Lin's title to the Property with respect to recording in real estate records or such other purposes as necessary in the future for conveyance of the Property.

9

find reversible error only when it materially affects the merits of the action with a 'firm belief that the decree or judgment is wrong.'" *Id*. (quoting *Murphy*, 536 S.W.2d at 32). "In other words, a party must not only demonstrate error but also show prejudice." *Id.* (citing *Murrell v. State*, 215 S.W.3d 96, 109-10 (Mo. banc 2007)).

## Analysis[9]

## Point I

In Chang's first point, she asserts that the trial court misapplied the law in concluding that Lin's obligation under the Contract to satisfy Chang's mortgage by September 1, 2014, was modified by the escrow Amendment to Contract. Chang does not question the validity of the Amendment, only its effect. Her challenge implicates the trial court's interpretation of the Amendment.

---

[9] In her Points Relied On, Chang asserts that "[t]he trial court erred by entering judgment in favor of Lin based on its conclusion of law." Under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), this Court will affirm the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id*. at 32. Chang fails, in each of her points relied on, to specify which *Murphy* ground she believes the judgment violates. "In order to comply with the rules of appellate procedure in Rule 84.04, a point on appeal must proceed under one of the *Murphy v. Carron* grounds, each of which requires a distinct analytical framework." *Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mtg. Inv. Tr. 2006-3 v. Luna*, 655 S.W.3d 820, 826 n.3 (Mo. App. W.D. 2022) (internal quotation marks omitted). "If a point on appeal fails to identify which one of the *Murphy v. Carron* grounds applies, Rule 84.04 directs us to dismiss the point." *Id*. (internal quotation marks omitted); *see* Rule 84.04(d)(1) (requiring that a point relied on state concisely the legal reasons for the claim of reversible error). "We do have discretion to review non-compliant briefs *ex gratia* when the argument is readily understandable." *Luna*, 655 S.W.3d at 826 n.3 (internal quotation marks omitted). In this case, we choose to exercise that discretion to review Chang's points under the *Murphy v. Carron* ground that a judgment allegedly erroneously applied the law, which we discern from the argument portion of her brief is her actual claim of trial court error.

"'[T]he primary rule of contract interpretation is that courts seek to determine the parties' intent and give effect to it.'" *Metrc, LLC v. Steelman*, 617 S.W.3d 472, 481 (Mo. App. W.D. 2021) (quoting *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013)). "In determining the intent of the parties to a contract, we review the terms of a contract as a whole, not in isolation." *Id*. (internal quotation marks omitted). "Where the contract consists of multiple documents, as is the case here, all of the documents must be read together in an effort to capture what was intended." *Id*. (internal quotation marks omitted). "We give the language used in the contract its plain and ordinary meaning." *Id*. "If, using the plain and ordinary meaning, the language is unambiguous, we may not resort to rules of construction to interpret the contract." *Id*. (internal quotation marks omitted).

The Contract provided that Lin and her then-husband "will take over [Chang's] payment of mortgage . . . till Buyers pay off loan on or before Sept. 1, 2014." The Owner Finance Addendum to the Contract provided that Lin's $120,000 note to Chang would be payable in equal monthly installments of $788.05 beginning on August 28, 2009, with "the entire unpaid principal balance, and accrued interest . . . due and payable in full on Sept. 1, 2014." The language in these two documents indicates that Lin was required to pay off Chang's existing mortgage on or before September 1, 2014.

However, about fifteen days after signing the Contract, Chang and Lin executed the Amendment to Contract, which stated that it modified the terms of the Contract in the following respects: Chang would put $21,000 of Lin's $50,000 deposit in escrow to be held by Midwest Title Company, Inc. "until the first day of September, 2014 or until

11

[Lin] completely pays the balance of [Chang's] loan against said property," at which time the escrowed amount would be released to Lin. "The disjunctive 'or' in its ordinary sense marks an alternative generally corresponding to the term 'either.'" *Piercy v. Mo. State Highway Patrol*, 583 S.W.3d 132, 142 (Mo. App. W.D. 2019) (internal quotation marks omitted). We conclude that the plain and unambiguous use of the disjunctive word "or" in the Amendment to Contract clearly created an "either/or" connection of the two phrases in the amendment.

Accordingly, the trial court correctly concluded that the language in the Amendment to Contract modified the loan payoff date to *either* September 1, 2014, *or* when Lin paid the balance of Chang's loan. The language did not stipulate that the payoff date would be whichever date or event occurred first. The trial court did not misapply the law in concluding that the Amendment language "did not require a balloon payment on September 1, 2014, as Lin contractually had 'until the buyer completely pays the balance of the Bank of America loan against said Property.'" Accordingly, the trial court correctly concluded that it was Chang, not Lin, who breached the terms of the contract between the parties.

Point I is denied.

### Points II and III

Given our ruling in Point I that the trial court correctly concluded that Lin did *not* breach the Contract and, instead, Chang was the defaulting party under the terms of the Contract, we need not and do not address Chang's Points II and III which claim trial

court error when the trial court refused to consider Chang's alleged affirmative defense of breach of contract due to the equitable principles of estoppel and laches.[10]

**Conclusion**

The trial court's judgment awarding Lin damages for breach of contract, ordering specific performance of the Contract, and quieting title in the Property to Lin is affirmed.

/s/ *Mark D. Pfeiffer*
_____
Mark D. Pfeiffer, Judge

Thomas N. Chapman, Presiding Judge, and Cynthia L. Martin, Judge, concur.

---

[10] However, had we concluded that Lin had breached the Contract, we note that the trial court's alternative application of the principles of estoppel and laches were factually and legally supported in the present case. *See* n.7. "The equitable defenses of estoppel and laches are closely related." *Kansas City Area Transp. Auth. v. Donovan*, 601 S.W.3d 262, 276 (Mo. App. W.D. 2020) (internal quotation marks omitted). "Much like laches, [e]quitable estoppel arises from the unfairness of allowing a party to belatedly assert known rights on which the other party has, in good faith, relied thereby and become disadvantaged." *Id*. (internal quotation marks omitted). "The doctrine of laches is the equitable counterpart of the statute of limitations defense." *Id*. at 275 (internal quotation marks omitted). "Its purpose is to avoid unfairness which can result from the prosecution of stale claims." *Id*. (internal quotation marks omitted). Laches may be invoked where a party "knew of the facts giving rise to [her] rights and delayed assertion of [her] rights for an excessive amount of time, and that the [other party] suffered legal detriment as a result." *Id*.